## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DR. RICHARD CARRIER | : | |
| 134 West Tulane Road, Apt. B | : | |
| Columbus, OH 43202 | : | |
| | : | Case No. |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Judge: |
| | : | |
| FREETHOUGHTBLOGS NETWORK | : | |
| C/O Paul Z. Myers | : | |
| 300 College Avenue | : | |
| Morris, MN 56267-2100 | : | |
| | : | |
| PAUL Z. MYERS, PH.D. | : | |
| 300 College Avenue | : | |
| Morris, MN 56267-2100 | : | **COMPLAINT FOR** |
| | : | **MONEY DAMAGES** |
| THE ORBIT | : | **AND OTHER RELIEF** |
| C/O Stephanie Zvan | : | |
| 2101 11'th Avenue South | : | |
| Minneapolis, MN 55404-2906 | : | **JURY DEMAND** |
| | : | **ENDORSED HEREIN** |
| STEPHANIE ZVAN | : | |
| 2101 11'th Avenue South | : | |
| Minneapolis, MN 55404-2906 | : | |
| | : | |
| SKEPTICON, INC. | : | |
| C/O Registered Agent | : | |
| 710 W. Greenwood | : | |
| Springfield, MO 65808 | : | |
| | : | |
| LAUREN LANE | : | |
| 31 Apostle Court | : | |
| Fenton, MO 63026 | : | |
| | : | |
| AMY FRANK-SKIBA | : | |
| 3411 North 16'th Street, Apt. 2040 | : | |
| Phoenix, AZ 85016 | : | |
| | : | |
| Defendants | : | |

Now comes Plaintiff **Dr. Richard Carrier** (hereinafter "Dr. Carrier" or "Plaintiff"), by and through undersigned counsel, and states the following as his Complaint for defamation per se, tortious interference with a business expectancy, intentional infliction of emotional distress, and for negligent infliction of emotional distress.

## JURISDICTION AND VENUE

1. This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2. This Court enjoys personal jurisdiction over the non-resident Defendants pursuant to Ohio's long-arm statute, codified as Ohio Revised Code 2307.382, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because Defendants committed acts outside of the State of Ohio intended to cause and causing injury in the State, including but not limited to the intentional publication of defamatory statements of and concerning an Ohio resident, who's professional activities are centered in the district.

3. This Court enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion of the events that gave rise to Plaintiff's claims accrued within the State of Ohio, including Defendants' express targeting of the Plaintiff in the State of Ohio, Defendants' publication and republication of the defamatory falsehoods in the district, the damage to Plaintiff's reputation suffered in the district, and Defendants' tortious interference with Plaintiff's business expectancies in the district.

## THE PARTIES

4. Plaintiff, Dr. Richard Carrier, is a Ph.D. in the history of philosophy from Columbia University, and author of numerous scholarly books and articles published by reputable

publishing houses, including, *Sense and Goodness Without God: A Defense of Metaphysical Naturalism* (2005), *Not the Impossible Faith* (2009), *Why I Am Not a Christian: Four Conclusive Reasons to Reject the Faith* (2011), *Proving History: Bayes's Theorem and the Quest for the Historical Jesus* (2012), *Hitler Homer Bible Christ* (2014), *On the Historicity of Jesus: Why We Might Have Reason for Doubt* (2014), and *Science Education in the Early Roman Empire* (2016). Dr. Carrier has authored chapters in many other books and articles in magazines and academic journals, and on his namesake blog. Dr. Carrier lectures and teaches worldwide. Dr. Carrier is a resident of the State of Ohio.

5. Defendant, **FreethoughtBlogs Network**, freethoughtblogs.com (hereinafter "FreethoughtBlogs" or "Defendant"), was founded in 2011 by Defendant Paul Z. Myers, Ph.D. and others as a network to host Defendant Myers' blog, *Pharyngula*, and other blogs in the atheist/secular field, over which FreethoughtBlogs exercises content control. According to Internet ratings service Quantcast, FreethoughtBlogs.com reaches over 160,000 people monthly, of which 51% are located in the United States. FreethoughtBlogs' principal place of business is in the State of Minnesota.

6. Defendant, **Paul Z. Myers, Ph.D.** (hereinafter "Dr. Myers" or "Defendant"), founded FreethoughtBlogs Network, where he hosts and authors the blog titled *Pharyngula*. In 2006, the science journal *Nature* ranked *Pharyngula* as first among its "Top Five Science Blogs," based on popularity. In 2009, former Secular Student Alliance board member, Hemant Mehta, placed *Pharyngula* at the top of the list, based on subscriptions, "The 30 Most Popular Atheist Blogs."

7.  Defendant Myers is a member of FreethoughtBlogs and author of the June 21, 2016 story entitled, "Richard Carrier's blog," and is responsible for publishing the June 26 story entitled, "The FtB Ethics Committee on Richard Carrier."  Defendant Myers resides in Minnesota.

8.  Defendant, **The Orbit**, the-orbit.net (hereinafter "The Orbit" or "Defendant") is a media site with its principal place of business in the State of Minnesota.  According to its mission statement, it is committed to social justice, and provides a platform for writing, discussion, activism, collaboration, and community.  The Orbit's stated purpose is a more just and equitable world, free of disadvantage on the basis of gender, gender identity, race, age, economic or other social class, sexuality, physical ability or mental illness, geography, nationality, immigration status, and other forms of marginalization and systemic oppression.  The Orbit exercises joint ownership and content control, and is home to twenty or more writers who's work has been featured in both print and online publications that include *Salon*, *Scientific American*, *xoJane*, *The Atlantic*, and *The Times*.  According to The Orbit, the organization aims to release an anthology of work by its writers, hold an online conference, and to rival the best media sites.

9.  Defendant **Stephanie Zvan** (hereinafter "Zvan" or "Defendant"), according to her Wikipedia page, is "an American skeptic, feminist activist and radio host, blogger, newspaper writer, and fiction author.  Her radio show, "Atheists Talk", is produced by Minnesota Atheists and broadcast on KTNF in Minnesota.  Her fiction has been published in *Nature* and *Scientific American*."  Zvan is involved in "research on 'collaborative social blocking' of Internet trolls to provide a more inviting social space for women and other minorities."  According to Defendant Zvan, she also blogs about science and sex, and the science of sex.

10. Defendant Zvan is a member of The Orbit and author of the June 20, 2016 story entitled, "Summarizing the Current Allegations Against Richard Carrier," and a July 30 follow-up Facebook® post. Defendant Zvan resides in Minnesota.

11. Defendant **Skepticon, Inc.**, skepticon.org (hereinafter "Skepticon" or "Defendant"), was founded in 2008 by Defendant Lauren Lane and others, and has become one of the largest skeptic and secular conventions held in the United States. According to its mission statement, Skepticon supports, promotes, and develops free-thought, skeptic, and scientific communities through educational programming. Quoting Skepticon organizer JT Eberhard, "[s]keptics conferences are an important part of the movement. They not only grant people access to the icons of the movement, they also arm those in attendance with information . . ." Skepticon is a nonprofit corporation exempt from taxation according to 26 U.S.C. § 501(c)(3), and incorporated in the State of Missouri with its principal place of business in the city of Springfield.

12. Defendant, **Lauren Lane** (hereinafter "Lane" or "Defendant"), co-founded Skepticon, Inc., where she currently serves as president. As a writer, Lane has been published to *The Friendly Atheist*, and *MadArtLabs*. She has spoken at conventions that include the Secular Student Alliance Convention, FtBCon, and Reason in the Rock.

13. Defendant Lane is a member of Skepticon and author of the June 20, 2016 story entitled, "Keeping Skepticon Safe: Richard Carrier To Be Banned." Defendant Lane resides in Missouri.

14. Defendant, **Amy Frank-Skiba** (hereinafter "Frank-Skiba" or "Defendant"), is the former president of the Arizona State University chapter of the Secular Student Alliance.

15. Defendant Frank-Skiba is author of a false and defamatory June 15, 2016 Facebook® post, and a gofundme® campaign on which she published false, defamatory, and outrageous allegations. Defendant Frank-Skiba resides in Arizona.

16. The number of broadband subscribers in the United States with access to Defendants' statements is more than 100 million according to the Organization of Economic Cooperation and Development ("OECD"). *Total Fixed and Wireless Broadband Subscriptions by Country* (Dec. 2015), available at http://www.oecd.org/internet/broadband/oecdbroadbandportal.htm (last visited August 11, 2016). The number of broadband subscribers in other English speaking nations with access to Defendants' statements, according to the OECD, is as follows: UK 24.65 million, Canada 13 million, Australia 6.76 million, New Zealand 1.47 million, and Ireland 1.3 million. *Id*.

## STATEMENT OF FACTS

17. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

18. Dr. Carrier is the author of several notable works, having served in that capacity since 2005; and holds degrees from Columbia University and the University of California Berkeley.

19. Through and as a result of his accomplishments in a career spanning more than a decade, Dr. Carrier has become well known to the public throughout the United States as a professional writer, lecturer, and teacher, and has created for himself a unique public personality and image; and his image, likeness and public personality have become commercially valuable commodities.

20. Dr. Carrier's current occupation is that of author, co-author, lecturer, teacher, blogger, and he continues to write books professionally.

21. Dr. Carrier also remains an active political and philosophical commentator, and would like to continue writing and lecturing professionally.

22. Dr. Carrier has had professional relationships and valid ongoing business expectancies with various reputable publishing houses and co-authors.

23. Dr. Carrier has had professional relationships and valid ongoing business expectancies with organizations that include; the Secular Student Alliance (SSA), and the SSA's hundreds of campus affiliates, Camp Quest, and its many regional affiliates, the Center for Inquiry, the Freedom From Religion Foundation, the United Coalition of Reason, American Atheists, Atheist Alliance of America, the American Humanist Association, and the Council for Secular Humanism, FreethoughBlogs.com, Skepticon.org, and hundreds of other local secular community groups across the entire United States, including Ohio and beyond who cater to humanists, atheists, and skeptics, as well as ethical societies, and churches and religious organizations (who have hired him for interfaith work), which have been his principal source of speaking and direct sales income.

24. In November 2012, Dr. Carrier had an extramarital affair. In 2013, after confessing the affair, Dr. Carrier and his wife attempted an open marriage. In 2015, however, Dr. Carrier and his ex-wife ended their marriage, after which Dr. Carrier publicly declared himself polyamorous.

25. Dr. Carrier has for many years been an outspoken advocate for ethical conduct in the treatment of women and men, and an ardent defender of responsible, sex-positive feminism, and ethical non-monogamy, and as a crucial part of that advocacy, he has himself always respected anyone's stated boundaries, and would never subject anyone to harassment of any kind.

*Defendants' False and Defamatory Statements*

26. In Myers' article he recounts and republishes false and defamatory allegations of sexual

harassment (the "Narrative"), and alleges a pattern of "repeated boundary-pushing behavior."

Myers' article reads, in its entirety, as follows:

> "One of our writers, Richard Carrier, has been banned from Skepticon for "his repeated
> boundary-pushing behavior". This is, obviously, a serious accusation, and we've been
> investigating further. We now have several first-hand reports of persistent, obnoxious
> sexual behavior in defiance of specific requests that he cease. We believe his accusers.
>
> Here at Freethoughtblogs, we are sex-positive, but we are also committed to the principle
> of consensual sexual behavior. We go further, and beyond demanding that there always
> be consent, we also insist on respect for your partners. No means no, not just because it's
> held as a dogmatic rule, but because it reflects a sincere appreciation of the autonomy of
> other people. We cannot tolerate violations of this essential principle.
>
> While Dr Carrier has been a valued contributor to this network, we have to demand
> support of that principle in actions as well as words. After a review of the evidence so far,
> Richard Carrier's posting privileges have been suspended, pending further evaluation,
> and all comments on his blog have been closed.
>
> If you wish to make a testimonial, pro or con, about Dr Carrier, you can send them to me
> in confidence. We will consider all the evidence before making a final decision on his
> case.
>
> We also support Skepticon and their commitment to equality and justice. If you do too,
> donate."

A true and correct copy of Myers' article, "Richard Carrier's blog," is attached hereto marked

**Exhibit 1**.

27. False and defamatory statements attached hereto as Exhibit 1 include, but are not limited to,

the assertion that Dr. Carrier engaged in "persistent" sexual behavior "in defiance of specific

requests that he cease."

28. The quoted passage attached hereto as Exhibit 1 is defamatory, intentionally reckless and

malicious.

8

29. On information and belief, Defendants made no effort to investigate or substantiate the statements' veracity before republishing allegations Defendants either knew to be false or made with reckless disregard as to truth or falsity.

30. The quoted passage attached hereto as Exhibit 1, suspending the Plaintiff's privileges, is demonstrative of FreethoughtBlogs' and Myers' exercise of content control over the blogs they host.

31. On information and belief, FreethoughtBlogs and Myers have previously suspended bloggers for such misconduct as plagiarism, demonstrative of FreethoughtBlogs' and Myers' exercise of content control over the blogs they host.

32. On information and belief, in or around August 2013, Defendant Myers published and broadcast allegedly false, defamatory, libelous, inaccurate, and misleading statements about another public figure, under similar circumstances, and was the subject of a cease and desist demand.

33. Demonstrative of Defendants' malice or reckless disregard, the policies and practices described herein were previously the topic of a presentation sponsored and organized by FreethoughtBlogs, and by future members of The Orbit, and known to Ms. Lane and Ms. Zvan, styled *Sexual Harassment Law and You*.  California attorney and law blogger Ken White, expounded sexual harassment laws and private anti-harassment policies for convention organizers, to wit:

> " . . . ***it's good policy to ask the accused for their side of events***, because, number one, it gives credibility and effectiveness to the anti-harassment policy and the procedure.  And, number two, it wards off potential litigation, possibly bogus litigation, possibly litigation with some merit in it . . . " (emphasis added).

> " . . . an anti-harassment policy doesn't mean that you automatically believe, or accept, everything that's ever said to you in a complaint."

[one] " . . . step in investigation that your investigators need to know about, is talking to witnesses. And you need to talk to the complaining… the complaining person, Who saw this? Who else might know about it? Who can we talk to? And then you need to talk to these people . . . "

A full transcript of *Sexual Harassment Law and You* is available at http://the-

orbit.net/lousycanuck/2014/02/08/ftbcon2-sexual-harassment-law-and-you-with-full-

transcript-ftbcon/.

34. Demonstrative of Defendants' malice or reckless disregard, the acts or practices described

herein have been previously determined by the Reporters Committee For Freedom Of The

Press (the "Committee"), an association assisting journalists, to violate the standards for

journalist integrity, to wit:

"Do not let your opinion about whether someone is a public figure or official color your decision to verify the accuracy of a story. Juries do not respond favorably to reporters who fail to confront their subjects with defamatory information and provide them with an opportunity to comment."

Defendants committed said violations after the Committee made available for public

inspection the *First Amendment Handbook* (2011), available at

http://www.rcfp.org/rcfp/orders/docs/FAHB.pdf.

35. The foregoing policies and practices, though known to Defendants, were willfully

disregarded as to Dr. Carrier, and go to Defendants' ill will or reckless disregard for truth or

falsity. Defendants were willfully blind as to the Plaintiff, in light of Defendants' experience

and responsibility as journalists, and their involvement presenting, publishing, and attending

the foregoing presentation.

36. The quoted passage attached hereto as Exhibit 1 republishes false and defamatory allegations

(the "Narrative"), originally published by Ms. Stephanie Zvan and The Orbit, and published

by Ms. Lauren Lane and Skepticon.org, both falsely alleging a 2012 incident of sexual

harassment.

37. In Zvan's article she recounts and republishes alleged incidents of sexual harassment,

claiming personal knowledge of no fewer than five incidents, and alleging a pattern of

boundary pushing and problem behavior.  Zvan's article reads, in its entirety, as follows:

> "Summarizing the Current Allegations Against Richard Carrier
>
> June 20, 2016 | Stephanie Zvan
>
> Skepticon has just released a statement saying that Richard Carrier will not be allowed to attend their future conferences because of inappropriate behavior.  They had previously stopped inviting him to speak after he displayed a pattern of pushing a staffer's boundaries.
>
>> In light of the recent revelations of sexual harassment, unwelcome attention, and/or unwanted behavior from more than one prominent atheist, Skepticon would like to renew our vow to keep our attendees, speakers, volunteers, vendors, organizers, and anyone else involved in Skepticon safe at our events.
>>
>> The accusations specifically against Richard Carrier are, sadly, not so surprising to the Skepticon organizers.  While he was a featured speaker for many years, we stopped inviting him to speak partly because of his repeated boundary-pushing behavior, including towards someone involved in Skepticon.  What has been made clear by the recent discussions is that our attendees' well being and comfort is put at an unacceptable risk by Carrier's presence, and so we are officially prohibiting Richard Carrier from attending any future Skepticons.
>
> In case you missed it last week, this is the third allegation of flatly unacceptable behavior from Carrier to be made public.  The first he publicized himself.
>
>> At an afterparty at a pub after a sponsored event that had an event policy against making sexual advances, after having engaged in fascinating and intense conversation with a woman for hours, I badly misread her fascination with the subject as flirtatious interest in me, and I told her that I'd like to make a pass at her.  She was confused and taken aback by that, was definitely not interested, and I immediately realized I'd crossed a line with her.  I was worried I had made her uncomfortable.  I immediately apologized.  She continued on her own interest to engage me in excellent conversation for several hours more and everything turned out well, but still.  I should not have said that to her.

We now know this was a student event and the rule he was breaking was "Speakers must refrain from initiating any and all sexual behavior with students with respect to Speakers Bureau events." Nothing in this rule makes this okay if you think the student is interested in you. Nothing in this rule makes this okay if they don't run away afterward. This is true despite Carrier's mentioning both of these as though they were mitigating circumstances.

As of last week, we also have this public accusation of him violating the policy with another student. She says he hit on her and nonconsensually touched her arm and leg. There are comments from another student corroborating that these aren't new accusations. This is the accusation that the Secular Student Alliance investigated and which resulted in his removal from the SSA Speakers Bureau.

Note that if you click through, you'll see an allegation that Camp Quest allowed Carrier to work for them after knowing that the SSA took action. (The executive directors of the organizations are married.) Everyone agrees at this point that this didn't happen. However, Camp Quest did promote Carrier showing off their logo at an event more recently than this. There are also questions about whether students were given enough information to protect themselves after Carrier spoke at events at SSA affiliate groups and was allowed to volunteer at SSACon. The SSA is conducting a board-level review of their actions here and their relevant policies and procedures.

Carrier denies this accusation. He says he didn't fight the SSA Speakers Bureau removal because he thought it was about the event he made public. However, in this denial, he says straight out that he told her he would be interested in dating her. I'm not sure how that's not initiating sexual behavior except in that it failed. Otherwise, it's breaking the same SSA rule as the event he previously volunteered. A student saying they're considering a poly relationship is not initiating a sexual relationship with the person they say it to. The person saying, "I'd like to date you", is. Carrier's other objections to Franks' statement are a defense of the SSA, not of his behavior.

I've spoken to a Skepticon organizer. The pattern there is similar, except that the expressions of sexual interest were repeated, though more deniably after they weren't reciprocated. I've also spoken with two other people who don't wish to come forward publicly. Both have been on the receiving end of Carrier's unwanted interest. In both cases, he met their polite deferral of his interest with more blunt expressions of interest. There are also very troubling aspects of how Carrier spoke of these people to others. I won't go into that in detail because it has the potential to identify them.

Whether I'm looking at all five of these accusations or only the three public ones, my reaction is the same. The most charitable thing I can find to say about Carrier's behavior is that he is oblivious to sexual disinterest in him and unwilling to stop initiating sexual contact despite that. I'm not inclined to that kind of charity in the face of that much problem behavior, however. I'm even less inclined to charity for someone who repeatedly breaks rules designed to protect students to behave that way. Less so yet for someone who tells us that in a post defending himself.

At this point, I have to conclude that Carrier is highly resistant to changing this behavior. He's received plenty of feedback. Organizations and individuals have told him that what he's done is wrong. His response is to handwave at irrelevancies. I don't know why anyone would look at his recent blog post on this and think it won't happen again the moment the opportunity presents itself."

A true and correct copy of "Summarizing the Current Allegations Against Richard Carrier" is attached hereto marked **Exhibit 2**.

38. False and defamatory statements attached hereto as Exhibit 2 include, but are not limited to, the assertion that Dr. Carrier displayed "a pattern" of "pushing a staffer's boundaries" and that his "expressions of sexual interest were repeated" even "after they weren't reciprocated" and that the Plaintiff met the "polite deferral of his interest" from someone with "more blunt expressions of interest" and that the Plaintiff "nonconsensually [sic] touched [Ms. Frank-Skiba's] arm and leg" and that Ms. Frank-Skiba's Facebook® post (Exhibit 4) contained statements "from another student corroborating that these aren't new accusations."

39. The quoted passage attached hereto as Exhibit 2 is defamatory, intentionally reckless and malicious.

40. Demonstrative of Defendants' exercise of content control over the blogs they host, according to The Orbit's founders:

" . . . when necessary, including admissions, all our bloggers vote, and upholding the site rules is the policy group's job"

" . . . decisions are taken collectively by contributors who know one another and share the same basic principles"

" . . . the Orbit is a collective democracy . . . "

*Mission Statement*, available at http://the-orbit.net/about-us/.

*Four Things The Orbit Is Doing Differently, And Why We Founded It*, available at http://the-orbit.net/godlessness/2016/03/17/four-things-orbit-differently/.

41. On information and belief, Defendants made no effort to investigate or substantiate the statements' veracity before republishing allegations Defendants either knew to be false or made with reckless disregard as to truth or falsity.

42. The quoted passage attached hereto as Exhibit 2 contains a link, quoting and republishing a false and defamatory article, originally published by Ms. Lauren Lane and Skepticon.org, alleging sexual harassment (the "Narrative"). Ms. Lane's article reads, in its entirety, as follows:

> "KEEPING SKEPTICON SAFE: RICHARD CARRIER TO BE BANNED
>
> by Lauren Lane | Jun 20, 2016
>
> In light of the recent revelations of sexual harassment, unwelcome attention, and/or unwanted behavior from more than one prominent atheist, Skepticon would like to renew our vow to keep our attendees, speakers, volunteers, vendors, organizers, and anyone else involved in Skepticon safe at our events.
>
> The accusations specifically against Richard Carrier are, sadly, not so surprising to the Skepticon organizers. While he was a featured speaker for many years, we stopped inviting him to speak partly because of his repeated boundary-pushing behavior, including towards someone involved in Skepticon. What has been made clear by the recent discussions is that our attendees' well being and comfort is put at an unacceptable risk by Carrier's presence, and so we are officially prohibiting Richard Carrier from attending any future Skepticons.
>
> We support the accusers.
>
> It is unfortunate there are people in this world who believe they can violate others' boundaries without consequence. Skepticon does not want those people at our events.
>
> Our harassment policy can be found here. We are currently refining our method of handling such complaints so as to be as effective as possible when faced with them. We are investigating formal training options for our organizers and volunteers, and are forming a team who will be dedicated to protecting everyone at Skepticon."

A true and correct copy of Ms. Lane's June 20, 2016 article is attached hereto marked

**Exhibit 3**.

43. False and defamatory statements attached hereto as Exhibit 3 include, but are not limited to, the assertion that Dr. Carrier engaged in "repeated boundary-pushing behavior" at Skepticon or with anyone associated with Skepticon, and that Skepticon, Inc., "stopped inviting [Dr. Carrier] to speak partly because of" the alleged incidents "including towards someone involved in Skepticon" alleging multiple incidents, and alleging the intention as early as 2013 to exclude the Plaintiff's presence at Skepticon for this reason, and the assertion that "attendees' well being and comfort is put at an unacceptable risk by Carrier's presence . . . "

44. The quoted passage attached hereto as Exhibit 3 is defamatory, intentionally reckless and malicious.

45. On information and belief, Defendants made no effort to investigate or substantiate the statements' veracity before republishing allegations Defendants either knew to be false or made with reckless disregard as to truth or falsity.

46. The quoted passage attached hereto as Exhibit 2 also contains a link republishing a false and defamatory June 15, 2016 social media post, originally published by Ms. Amy Frank-Skiba, the former president of the Arizona State University chapter of the Secular Student Alliance. In her post, Ms. Frank-Skiba alleges a 2015 incident of sexual assault and sexual harassment (the "Narrative").  Ms. Frank-Skiba's post reads, in its entirety, as follows:

> "Amy Frank
> June 15
>
> Parents, and younger people who may graciously volunteer for Camp Quest, a summer camp for kids:
>
> Richard Carrier, the man who sexually harassed me and touched me a year ago after speaking at ASU is now an official employee of this organization.  Campus Quest and the Secular Student Alliance are partners, and fully aware of what transpired last year.  I'm not even close to being his only victim, and there are even more victims of other speakers of the SSA.

Want to know why he continues to be involved after being banned from being an SSA speaker? He is dating the wife of the Executive Director of the Secular Student Alliance. This woman is the head of Camp Quest."

Corrupt people continue to destroy what could be wonderful organizations. I am officially BOYCOTTING the national Secular Student Alliance until their leadership is completely dismantled. Students deserve to have an organization capable of handling sexual harassment and assault, with no conflicts of interest. Not only is abuse fairly common at SSA events, but the organization itself goes out of their way to undermine the reports of its very own members' trauma.

I've held my tongue far too long. No more sweeping this shit under the rug. Time to own the fuck up and face the music. The victims have had enough.

If you've been a victim of harassment or assault at any SSA-sponsored event, please feel free to contact me. I will keep your name confidential.

#secularstudentalliance #sexualassault #sexualharassment #nomeansno #resign"

A true and correct copy of Ms. Frank-Skiba's June 15, 2016 post is attached hereto marked

**Exhibit 4**.

47. False and defamatory statements attached hereto as Exhibit 4 include, but are not limited to, the assertion that Ms. Frank-Skiba was "not even close to being his only victim" and that the Plaintiff "sexually harassed" her and "touched" her, and the allegation of sexual assault with the hashtag "#sexualassault."

48. The quoted passage attached hereto as Exhibit 4 is defamatory, intentionally reckless and malicious.

49. The quoted passage attached hereto as Exhibit 4, and the derivative passages referencing and republishing falsehoods therein, alleges corruption involving Camp Quest and the Secular Student Alliance, organizations headquartered in Ohio.

50. On information and belief, Defendants made no effort to investigate or substantiate the statements' veracity before republishing allegations Defendants either knew to be false or made with reckless disregard as to truth or falsity.

51. On information and belief Ms. Frank-Skiba previously lodged a complaint with the Secular Student Alliance, in or around May 2015, alleging a violation of the SSA's policy against fraternization (i.e. expressing romantic interest while Dr. Carrier was a member of the SSA Speaker's Bureau).  On information and belief, Ms. Frank-Skiba's May 2015 complaint bears no factual resemblance to her subsequent, false statements attached hereto as Exhibits 4 and 18.

52. As a direct and proximate cause of Ms. Frank-Skiba's May 2015 complaint, the Secular Student Alliance were persuaded to remove Dr. Carrier from the organization's Speaker's Bureau, in or around August 2015, eliminating associated promotional, logistical, and financial support.  The Secular Student Alliance did not conclude, however, that Dr. Carrier violated the organization's sexual harassment policy, which policy is separate and distinct from its fraternization policy.

53. As a direct and proximate cause of Defendants' false and defamatory statements attached hereto as Exhibits 1-4, on or about June 21, 2016 FreethoughtBlogs.com was persuaded to block Dr. Carrier's access to his blog, and from publishing content.

54. FreethoughBlogs.com proposed to investigate the claims only after the fact, refusing to identify Dr. Carrier's accuser(s), rendering impossible a fair and effective investigation, and ultimately forcing Dr. Carrier to relocate his body of work to a domain of his own, to regain promotional and publishing control from FreethoughtBlogs' interference.

55. After relocating his body of work, FreethoughtBlogs deviated from their customary procedure and removed Dr. Carrier's content without rerouting links to the new domain, severely disrupting access to his work and search engine visibility.

56. On or about June 26, FreethoughtBlogs posted a statement that reads, in its entirety, as

follows:

> "Freethought Blogs unequivocally condemns any behavior that threatens the safety of
> atheist community members, including particularly marginalized groups. Freethought
> Blogs also recognizes the role of sexual harassment as one of numerous barriers for
> women that limits access to and participation within atheist conferences and spaces.
>
> When the recent allegations against Richard Carrier were made public, Freethought Blogs
> initiated a process to investigate these claims and formalize its policy concerning the
> conduct of its members. The FtB Ethics Committee received several reports of Carrier's
> behavior and was in the process of reviewing them when Carrier chose to leave the
> network. A thorough review of the allegations against Carrier cannot be completed by
> Freethought Blogs without his cooperation.
>
> As part of our commitment to equitable access to freethinking spaces for all, Freethought
> Blogs members who violate our commitment to social justice by creating or maintaining
> barriers to participation will be removed from the network as a matter of policy. All
> reports submitted to us in furtherance of this policy will be kept in the strictest of
> confidence, unless the accusation was made publicly or in the event we have express
> permission to reproduce the complaint.
>
> -The FtB Ethics Committee"

A true and correct copy of FreethoughtBlogs' June 26 statement is attached hereto marked

**Exhibit 5**.

57. The quoted passage attached hereto as Exhibit 5, subjecting Dr. Carrier to an ethics

committee investigation, is demonstrative of FreethoughtBlogs' and Myers' exercise of

content control over the blogs they host.

58. On or about July 6 and July 26, 2016, Dr. Carrier, by and through counsel, sent to Defendants

cease and desist letters by Certified U.S. Mail.  Among other demands, Dr. Carrier insisted

on a full written retraction.  A copy of said letters is attached hereto as **Exhibits 6-9**.

59. Certified Mail notice was returned and claimed by Defendant Myers on July 29, 2016.  A

copy of the U.S. Postal return receipt is attached hereto as **Exhibits 10**.

60. Certified Mail notice was returned and claimed by The Orbit on August 5, 2016. A copy of the U.S. Postal return receipt is attached hereto as **Exhibit 11**.

61. Certified Mail notice was returned and claimed by Defendant Zvan on July 29, 2016. A copy of the U.S. Postal return receipt is attached hereto as **Exhibit 12**.

62. Certified Mail notice was returned and claimed by Skepticon on August 8, 2016. A copy of the U.S. Postal return receipt is attached hereto as **Exhibit 13**.

63. Certified Mail notice was returned and claimed by Defendant Lane on August 2, 2016. A copy of the U.S. Postal return receipt is attached hereto as **Exhibit 14**.

64. Certified Mail notice was returned and claimed by Defendant Frank-Skiba on July 9, 2016. A copy of the U.S. Postal return receipt is attached hereto as **Exhibits 15 and 16**.

65. Defendants refused each of Dr. Carrier's demands, including for a full written retraction, and to amend their statements to admit publicly that witnesses contradicted the account given by Ms. Frank-Skiba, and that apart from the singular complaint by Ms. Frank-Skiba, Dr. Carrier's behavior at events, including at Skepticon, had never been the subject of any formal complaint by anyone attending or staffing them for the entirety of his speaking career of more than ten years, and that none of the incidents claimed took place at an event or conference, and at no time did Dr. Carrier continue behavior he was told was unwelcome.

66. On or about July 30, 2016, Defendant Zvan posted a follow-up response to social media, in which she sustains and reaffirms her June 20, 2016 attacks, and claims personal knowledge of a sixth incident alleging sexual harassment (the "Narrative"). Zvan's follow-up post reads, in its entirety, as follows:

> "In case anyone is wondering, I fully stand by my original blog post about the allegations against Richard Carrier. It was and is conservative in its presentation of facts and opinions. I have also since heard from a sixth person, who was subject to his advances

after taking actions that should have made it crystal clear to him that she was not interested.

I can only assume that his choosing to blog about this less than a week after having me and others served cease-and-desist letters means that he recognizes those letters for the legally baseless objects of intimidation that they are. That he adopts tactics in that post that he decried when they were used against Karen Stollznow speaks to his integrity in a way that anyone dealing with him should pay close attention to.

Also, for the record, none of the people who have been defending Carrier recently have contacted me at all to find out the details behind that post. If they are relying on the information he presented about that post, they are sadly mistaken in many particulars."

A true and correct copy of Zvan's July 30, 2016 follow-up post is attached hereto marked

**Exhibit 17**.

67. In her July 30 follow-up post, Zvan affirmed that her defamatory statements are assertions of objective fact, not mere opinion nor ordinary rhetoric, and affirmatively refused Dr. Carrier's demand for corrections, upholding her statements as true. *Id*.

68. False and defamatory statements attached hereto as Exhibit 17 include, but are not limited to, the assertion that Dr. Carrier initiated "his advances" on someone even after they "took actions that should have made it crystal clear to him that she was not interested."

69. The quoted passage attached hereto as Exhibit 17 is defamatory, intentionally reckless and malicious.

70. Subsequent to receiving Dr. Carrier's cease and desist letter, Defendant Frank responded by starting a gofundme® campaign, on which she published a verbatim copy of the Plaintiff's letter, and posted additional false, defamatory, and outrageous allegations. Frank's post reads, in its entirety, as follows:

"Amy Frank is a neurobiology student at Arizona State University. Last year, she helped host a campus event, featuring Dr. Richard Carrier. Soon after the event, Amy reported that Dr. Carrier made several romantic and sexual advances toward her. In her own words.

"During the course of the night, Dr. Carrier brought up having sexual relations with my husband and I. He told me that he was disappointed that my husband wouldn't let me just have sex with him, but that'd he'd be willing to have my husband involved. My husband quickly fell asleep after arriving [at a friend's] house. Dr. Carrier kept whispering to me how my husband wasn't awake and wouldn't be for a while (insinuating that he wouldn't know if we did something inappropriate)...He repeatedly pointed out the fact that'd he had a vasectomy and how it much it increased his sexual performance.

"Dr. Carrier made me feel very uncomfortable. He is very charming so he did not scare me at first, but he got increasingly creepy throughout the night. He is very obsessed with his sex life and has no problem sharing it with students, and trying to involve them in it. I would never feel okay going to another speaking event of his, or being in a private setting with him again. I think it would be unfair to his future female audiences to not say something about his actions. If something happened, I would feel partially at fault for not reporting his behavior."

In June of this year, Amy Frank decided to publicly break the silence regarding her experience of being sexually harassed. We could not be more proud of her for taking such a brave step and for being an example to women in the same situation.

Unfortunately, following her announcement, Amy learned she was facing a defamation lawsuit for coming forward with her story (view the letter here ). As her friends, we created this campaign to fund her legal defense against the man who harassed her and is now suing her.

It's important that we support women taking a stand against sexual harassment. It is equally important to stand in solidarity with women when they need our help.

We will be bringing a bagged lunch to work and donating the price of lunch ($10) to Amy's defense. We hope you will join us.

If you are unable to donate please share and post this campaign on all of your social media.

Amy should not have to be put under financial strain for voicing her experience. Every bit goes a long way.

Help spread the word!"

A true and correct copy of Frank-Skiba's gofundme® campaign is attached hereto marked

**Exhibit 18**.

71. In her gofundme® campaign, Frank-Skiba affirmed that her defamatory statements are

assertions of objective fact, not mere opinion nor ordinary rhetoric. *Id*.

72. False and defamatory statements attached hereto as Exhibit 18 include, but are not limited to, the assertion that Dr. Carrier "kept whispering" to Ms. Frank-Skiba, with specific lascivious statements that were never said to her, and the allegation that he did so "repeatedly."

73. The quoted passage attached hereto as Exhibit 18 is defamatory, intentionally reckless and malicious.

74. Subsequent to receiving Dr. Carrier's cease and desist letter, on or about September 1, 2016, Defendants Skepticon, Inc. and Lauren Lane responded, by and through counsel, sustaining and reaffirming their June 20, 2016 attacks. A true and correct copy of Defendant Skepticon's and Lane's response is attached hereto marked **Exhibit 19**.

75. In their response, Skepticon and Lane affirmed their defamatory statements are assertions of objective fact, not mere opinion nor ordinary rhetoric, and additionally asserted evidence of statements by third parties, expressly affirming accusations of sexual harassment by multiple accusers against Dr. Carrier. *Id*.

76. As of August 15, 2016, Zvan's June 20 article garnered 45 comments. As of mid-July 2016, before it was removed from public view, Frank-Skiba's post garnered over 100 Facebook® reactions. Myers' June 21 article has garnered 132 comments, and Zvan's July 30 follow-up post garnered 36 Facebook® likes, including from Orbit member and Ohio resident Miri Mogilevsky. In substantial numbers readers agreed, based on untrue statements, that allegations of sexual harassment, a crime involving moral turpitude, as well as statements concerning Dr. Carrier's professional acumen and character, were true.

77. Defendants' defamatory statements above have been reported, republished, repeated, and/or re-broadcast in Ohio and nationwide, via social media, and web blog, and continue to be republished, repeated, and re-broadcast.

78. As of August 12, 2016, a Google® Trends report revealed that Internet searches using the term <u>Richard Carrier</u> came from Ohio more than any other State.  Ohio-based searches for <u>Richard Carrier</u> outpaced other States by no less than three-to-one (3:1).  A true and correct copy of the August 12, 2016 Google® Trends report is attached hereto marked **Exhibit 20**.

79. As of August 15, 2016, a Google® Trends report revealed that Internet searches using the term <u>Skepticon</u> came second most frequently from Ohio than any other State.  Only Missouri, outranked Ohio in searches for <u>Skepticon</u>.  Ms. Lane and Skepticon.org are both located in the State of Missouri.  A true and correct copy of the August 15, 2016 Google® Trends report is attached hereto marked **Exhibit 21**.

80. As of August 15, 2016, a Google® Internet search using the term <u>Richard Carrier</u> produced 48,500,000 results, including news articles and blogs that repeat the defamatory statements and accusations, and otherwise report and comment on them.

81. At the time they were written, Defendants knew their statements to be false or were made with reckless disregard as to truth or falsity, and that allegations against Dr. Carrier of sexual harassment never occurred and were defamatory, to wit:

   a. Ms. Lauren Lane had a prior intimate relationship with Dr. Carrier that ended under circumstances giving rise to malice, hate, spite, or ill will toward Dr. Carrier. [See Affidavit of Dr. Richard Carrier ("Carrier Affidavit") (attached as **Exhibit 25**)].

   b. Ms. Lane was openly and publicly affectionate and flirtatious with Dr. Carrier since at least 2011. *Id*.

   c. Ms. Lane's statements are contradicted by multiple witnesses with personal knowledge of the facts at issue.   True and correct copies of the Affidavit of Dana Carol Fredsti and David Fitzgerald are attached hereto marked **Exhibits 22 & 23** respectively.

d.  Pursuant to Ms. Amy Frank-Skiba's accusations, an independent professional investigation did not conclude that an assault or harassment occurred.  Defendant Zvan was aware of the investigation, and referred to the investigation in her June 20, 2016 article, attached hereto as Exhibit 2.

e.  Ms. Frank-Skiba's statements are contradicted by multiple witnesses with personal knowledge of the facts at issue.  A true and correct copy of the Affidavit of Spencer Hawkins is attached hereto marked **Exhibit 24**.

82. Knowing that the alleged statements, individually and collectively, were false, and that neither sexual assault nor sexual harassment had ever occurred, Defendants knowingly, intentionally, and maliciously, with hate, spite, or ill will toward Dr. Carrier, or with such reckless disregard of whether they were false or not, published the false and defamatory statements of and concerning Dr. Carrier as set forth above.

83. Knowing that the alleged statements, individually and collectively, were false, and that neither sexual assault nor sexual harassment had ever occurred, for the purpose of gaining notoriety and generating publicity for her own, and thereby furthering her own economic gain, and/or for other reasons presently unknown, Defendant Frank-Skiba knowingly, intentionally, and maliciously published the false and defamatory statements of and concerning Dr. Carrier as set forth above.

84. By falsely claiming, without privilege, that Dr. Carrier committed sexual assault and/or sexual harassment, Defendants intended to inflict a vicious, deliberate, and calculated attack on Dr. Carrier's character, reputation, and professional standing, and to turn the academic and skeptic communities against Dr. Carrier, and to cause them to have contempt, scorn, disgust, and hatred for him, and to hold him in the lowest possible regard.

85. Defendants' statements stigmatize Dr. Carrier as guilty of serious criminal offenses involving moral turpitude, allege behavior incompatible with the proper conduct of his business and trade, and injure his professional standing.

86. At the time their intentional false statements were made, Defendants knew of Dr. Carrier's valid business expectancies in his continued relationships with various reputable publishing houses and co-authors.

87. At the time their intentional false statements were made, Defendants knew of Dr. Carrier's valid business expectancies in his continued relationships with; the Secular Student Alliance (SSA), and the SSA's hundreds of campus affiliates, Camp Quest, and its many regional affiliates, the Center for Inquiry, the Freedom From Religion Foundation, the United Coalition of Reason, American Atheists, Atheist Alliance of America, the American Humanist Association, and the Council for Secular Humanism, FreethoughBlogs.com, Skepticon.org, and hundreds of other local secular community groups across the entire United States, including Ohio and beyond who cater to humanists, atheists, and skeptics, as well as ethical societies, and churches and religious organizations (who have hired him for interfaith work), which have been his principal source of speaking and direct sales income.

88. The Plaintiff's claims are related to harm occurring in Ohio, due to Defendants' activity outside the State of Ohio.  One or more member(s) of The Orbit is a resident of the State of Ohio.

89. Defendants knew Dr. Carrier's professional activities are centered in Ohio, knew of Dr. Carrier's expectancy to speak at venues with greater frequency in his home State of Ohio, and knew Camp Quest and the Secular Student Alliance are headquartered in Ohio, such that

Defendants reasonably should have known their tortious activity made it foreseeable they might be haled into court in Ohio.

90. Defendants committed one or more intentional torts. Defendants' Internet activity, including on, but not limited to, Freethoughtblogs.com, the-orbit.net, skepticon.org, Facebook®, and gofundme® is interactive. Defendants' Internet activity was specifically aimed at the forum State of Ohio.

91. Because Dr. Carrier's professional activities are centered in Ohio, the brunt of the harm caused by Defendants' tortious conduct is felt by the Plaintiff in Ohio, such that the State of Ohio can be said to be the focal point of the harm suffered as a result of Defendants' tortious activity.

92. Because Dr. Carrier's professional activities are centered in Ohio, and because Camp Quest and the Secular Student Alliance are headquartered in Ohio, where Dr. Carrier's ability to work for and with Camp Quest and the SSA has been severely damaged, Defendants expressly aimed their tortious conduct at the forum, such that the State of Ohio can be said to be the focal point of Defendants' tortious activity.

93. Dr. Carrier alleges special damages suffered in Ohio, and Defendants' defamatory statements were also published in the district.

## COUNT ONE
## DEFAMATION PER SE

94. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

95. Defendants' demonstrably false statements, without privilege, individually and collectively, impute to the Plaintiff serious criminal offenses involving moral turpitude. The publication and republication of the statements of and concerning Dr. Carrier proximately caused general

and special damages to the Plaintiff.  Defendants knew, anticipated, foresaw, and intended that the statements, with actual malice, made either with knowledge that they were false, or with reckless disregard of whether they were false or not, would be read by persons throughout Ohio and the United States and would damage the professional reputation of the Plaintiff.  The statements have adversely affected the Plaintiff's business and profession, including but not limited to his scholarly credibility, speaking, teaching, writing, and publishing opportunities, book sales, and blog income, and caused psychological and emotional trauma and suffering which is continuing.

**COUNT TWO**
**DEFAMATION PER SE**

96. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

97. Defendants' demonstrably false statements, without privilege, individually and collectively, impute to the Plaintiff behavior incompatible with the proper conduct of his business and trade, and injure his professional standing.  Defendants' statements referred to herein have caused, are causing, and will cause the Plaintiff to suffer injury to his professional standing, to his reputation, and good name; and, Defendants' statements have held and will continue to hold the Plaintiff up to public scandal and ridicule.  Defendants' statements of and concerning Dr. Carrier were made with actual malice, made either with knowledge that they were false, or with reckless disregard of whether they were false or not, calculated to expose the Plaintiff to public scorn, hatred, and ridicule.  By such published statements, Defendants did injure the Plaintiff's reputation within his business and professional circles in Ohio, and in the community at large.  The publication of the statements proximately caused general and special damages to the Plaintiff.  The statements have adversely impacted the Plaintiff's

scholarly credibility, and opportunities for writing, teaching, speaking, book sales, and blog income.  The statements have damaged the Plaintiff's professional standing in the academic community.  The statements have proximately caused the Plaintiff emotional and psychological trauma and suffering which is continuing.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

98. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

99. The Plaintiff had valid business expectancies in his continued relationships with various reputable publishing houses and co-authors.  Defendants knowingly, intentionally, and maliciously, or with reckless disregard, interfered with the business expectancy of the Plaintiff without justification.

100.    The Plaintiff had valid business expectancies in his continued relationships with; the Secular Student Alliance (SSA), and the SSA's hundreds of campus affiliates, Camp Quest, and its many regional affiliates, the Center for Inquiry, the Freedom From Religion Foundation, the United Coalition of Reason, American Atheists, Atheist Alliance of America, the American Humanist Association, and the Council for Secular Humanism, FreethoughBlogs.com, Skepticon.org, and hundreds of other local secular community groups across the entire United States, including Ohio and beyond who cater to humanists, atheists, and skeptics, as well as ethical societies, and churches and religious organizations (who have hired him for interfaith work), which have been his principal source of speaking and direct sales income.  Defendants knowingly, intentionally, and maliciously, with hate, spite, or ill will, or with such reckless disregard, interfered with the business expectancy of the Plaintiff without justification.

101.    As a direct and proximate cause of Defendants' interference with business expectancies, the Plaintiff has incurred compensatory damages in an amount to be determined at trial but which will exceed the sum of Fifty Thousand Dollars ($50,000).

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102.    The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

103.    At all times herein, Defendants acted intentionally and unreasonably in publishing and republishing false statements, maliciously, with hate, spite, or ill will toward Dr. Carrier, or with such reckless disregard of whether they were false or not, when Defendants knew or should have known that the Plaintiff's emotional distress would likely result.  Defendants acted intentionally and unreasonably in creating and publishing the Narrative, when they knew or should have known that emotional distress would likely result.  Notwithstanding the Plaintiff's requests that Defendants cease and desist immediately from their publishing of the Narrative, Defendants failed and refused to do so.

104.    Defendants' conduct was intentional and malicious, and done for the purpose of causing, or was known by Defendants to likely cause the Plaintiff humiliation, mental anguish, and severe emotional distress, and was done with wanton and reckless disregard for the consequences to the Plaintiff.

105.    In doing the acts alleged hereinabove, Defendants acted outrageously and beyond all reasonable bounds of decency, and intentionally inflicted severe emotional distress upon the Plaintiff, to his detriment.

106.    As a proximate result of the aforementioned wrongful conduct, the Plaintiff has suffered

substantial monetary damages, including damages to his personal and professional reputation

and career, and substantial emotional distress, anxiety, and worry.

107.    On information and belief the Plaintiff alleges that Defendants acted with actual malice

and reckless disregard for Plaintiff's personal and professional reputation and career.

108.    Unless and until enjoined and restrained by order of this Court, Defendants' continued

acts will cause the Plaintiff severe and irreparable injury which cannot adequately be

compensated by monetary damages.  By reason of the foregoing, the Plaintiff is entitled to

preliminary and permanent injunctive relief enjoining the publication and republication of the

false and defamatory Narrative.

109.    As a direct and proximate result of the aforementioned acts by Defendants, the Plaintiff

has suffered substantial monetary damages, including damages to his personal and

professional reputation and career, and substantial injury, damage, loss, harm, anxiety,

embarrassment, humiliation, shame, and severe emotional distress in an amount that has not

yet been fully ascertained.  As a direct and proximate result of the aforementioned acts by

Defendants, the Plaintiff has been damaged and will be damaged in an amount to be proven

at trial.

110.    On information and belief the Plaintiff alleges that the aforementioned acts of Defendants

were done intentionally or with a conscious and/or reckless disregard of the Plaintiff's rights,

and with the intent to vex, injure, or annoy, such as to constitute oppression, fraud, or malice.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111.    The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the

foregoing Paragraphs, as if they were set forth in full herein and further alleges the following

matters.

112.    At all times herein, Defendants acted negligently and unreasonably in publishing and

republishing false statements, maliciously, with hate, spite, or ill will toward Dr. Carrier, or

with such reckless disregard of whether they were false or not.  In so doing, Defendants acted

beyond all reasonable bounds of decency, and negligently inflicted emotional distress upon

the Plaintiff, to his detriment.

113.    Defendants' conduct was negligent, and proximately caused the Plaintiff to suffer

substantial humiliation, mental anguish, and severe emotional distress, and was done with

wanton and reckless disregard for the consequences to the Plaintiff.

114.    As a proximate result of the aforementioned wrongful conduct, the Plaintiff has suffered

substantial emotional distress, anxiety, and worry.

115.    On information and belief the Plaintiff alleges that Defendants acted with actual malice

and reckless disregard for Plaintiff's personal and professional reputation and career.

116.    Unless and until enjoined and restrained by order of this Court, Defendants' continued

acts will cause the Plaintiff severe and irreparable injury which cannot adequately be

compensated by monetary damages.  By reason of the foregoing, the Plaintiff is entitled to

preliminary and permanent injunctive relief enjoining the publication and republication of the

false and defamatory Narrative.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Dr. Richard Carrier, respectfully prays that the Court:

A. Assume jurisdiction of this case;

B. For Count I, enter a judgment in favor of the Plaintiff and against Defendants, jointly and severally, for compensatory damages in the amount of five hundred thousand dollars ($500,000), punitive damages in the amount of five hundred thousand dollars ($500,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

C. For Count II, enter a judgment in favor of the Plaintiff and against Defendants, jointly and severally, for compensatory damages in the amount of five hundred thousand dollars ($500,000), punitive damages in the amount of five hundred thousand dollars ($500,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

D. For Count III, enter a judgment in favor of the Plaintiff and against Defendants, jointly and severally, for compensatory damages in an amount in excess of Fifty Thousand Dollars ($50,000), and for punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable.

E. For Counts IV and V, enter a judgment for preliminary and permanent injunction against Defendants and all persons acting under their control, from any and all activity that would cause the publication and republication of the false and defamatory Narrative, in any and all formats, including all electronic and physical media.

Respectfully Submitted,

 /s/ Jeffrey T. Perry
Jeffrey T. Perry (0088989)
CAMPBELL PERRY, LLC
7240 Muirfield Drive, Suite 120
Dublin, OH  43017
(614) 668-8442
(614) 675-2210  fax
*jeff@campbellperrylaw.com*

*Counsel for Plaintiff*
Dr. Richard Carrier

## <u>JURY TRIAL</u>

The Plaintiff, through counsel, hereby requests a trial by jury on all triable issues, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

 /s/ Jeffrey T. Perry
Jeffrey T. Perry
Supreme Court No.:  0088989

*Counsel for Plaintiff*
Dr. Richard Carrier

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned hereby certifies that a true and accurate copy of the foregoing was served this 20'th day of September, 2016 addressed to the following:

FREETHOUGHTBLOGS NETWORK  
C/O Paul Z. Myers, Ph.D.  
300 College Avenue  
Morris, MN  56267-2100

PAUL Z. MYERS, PH.D.  
300 College Avenue  
Morris, MN  56267-2100

PAUL Z. MYERS, PH.D.  
Science and Math Division  
University of Minnesota Morris  
Biol 2390 Sci  
Morris, MN  56267

THE ORBIT  
C/O Stephanie Zvan  
2101 11'th Avenue South  
Minneapolis, MN  55404-2906

STEPHANIE ZVAN  
2101 11'th Avenue South  
Minneapolis, MN  55404-2906

Harmeet K. Dhillon  
DHILLON LAW GROUP, INC.  
177 Post Street, Suite 700  
San Francisco, CA  94108  
(415) 433-1700  
(415) 520-6593  fax  
*Harmeet@DhillonLaw.com*  
*Counsel for Defendants*  
Skepticon, Inc.; and Lauren Lane

AMY FRANK-SKIBA  
3411 North 16'th Street, Apt. 2040  
Phoenix, AZ  85016

AMY FRANK-SKIBA  
16188 West Mohave Street  
Goodyear, AZ  85338


          By:     <u>/s/ Jeffrey T. Perry</u>  
                 Jeffrey T. Perry  
                 Supreme Court No.:  0088989

                 *Counsel for Plaintiff*  
                 Dr. Richard Carrier