

Harmeet K. Dhillon
Harmeet@DhillonLaw.com

September 1, 2016

**VIA CERTIFIED U.S. MAIL AND EMAIL**

Jeffrey T. Perry, Esq.
Campbell Perry, LLC
7240 Muirfield Drive, Suite 120
Dublin, OH 43017
jeff@campbellperrylaw.com

Re: **Richard Carrier's Allegations Against Skepticon, Inc.**

Dear Mr. Perry:

This law firm represents Skepticon, Inc. ("Skepticon") and Lauren Lane in connection with your letter dated July 26, 2016, on behalf of Dr. Richard Carrier, in which you allege that Ms. Lane and/or Skepticon have defamed Mr. Carrier. Please direct all further communications concerning this matter to us, and cease from directly contacting Ms. Lane or any Skepticon agents.

In your letter, you allege that certain statements made in a June 20, 2016 post on Skepticon.org, entitled "Keeping Skepticon Safe: Richard Carrier To Be Banned" (the "Post"),[1] are defamatory. You state that our clients have "allege[d] very serious charges that include sexual harassment, repeated unwanted or boundary-pushing behavior, and intentional unwanted behavior, perpetrated upon multiple women," and you conclude that the statements published on Skepticon.org "accused Dr. Carrier of a crime involving moral turpitude and lowered his professional reputation." As discussed below, your client's allegations are unsupported in fact and law.

### The Statements Are Non-Actionable Opinion

First, the vast majority of the allegedly defamatory statements are non-actionable opinion or rhetoric, not statements of fact. To be actionable, a statement must "impl[y] an assertion of objective fact." *Shepard v. Courtoise*, 115 F.Supp.2d 1142, 1147 (E.D. Miss. 2000), *citing Nazeri v. Missouri Valley College*, 869 S.W.2d 303, 3014 (Mo. banc 1993); *see also Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (holding that statements in the form of opinions or questions "must be reasonably read as an *assertion* of a false *fact*" (internal citations omitted) (emphases in original)). Terms that require "a subjective determination" are "therefore incapable of factual proof," and are not actionable. *Beverly Hills, supra,* at 196 (holding the term "unfair" to be

---

[1] The Post is no longer published on Skepticon.org's website.

Plaintiff's Exhibit 19

subjective and not actionable as defamation). Nor does defamation liability arise from "imaginative expression," "rhetorical hyperbole," and/or "loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies..." *Shepard, supra,* at 1147 (citing cases holding that terms such as "unfair," "fascist," "blackmail," "liar," and "scab" are not actionable).

In this case, statements that Mr. Carrier engaged in "unwanted behavior," "boundary-pushing behavior" and/or "unwelcome attention" are not provably false, as required for defamation liability. That behavior is "unwanted," "unwelcome," or "pushes boundaries" is wholly subjective – what crosses the line for one person or organization, may be acceptable to another – and statements to this effect will not be held to be assertions of objective fact sufficient to give rise to defamation liability. *See, e.g., Shepard, supra.*

### The "Sexual Harassment" Statements Are True

Truth is an absolute defense to defamation, and for the purposes of this tort, "it does not matter whether a statement was made in bad faith, so long as it was true." *Nigro v. St. Joseph Medical Center* (2012) 371 S.W.3d 808, 818, *see also Rice v. Hodapp* (1996) 919 S.W. 2d 240, 243; Restatement (Second) of Torts § 581A cmt. a (1977) ("There can be no recovery in defamation for a statement of fact that is true, although the statement is made for no good purpose and is inspired by ill will toward the person about whom it is published and is made solely for the purpose of harming him.").

As an initial matter, your allegation that the Post accused Dr. Carrier of having sexually harassed "multiple women," and that he continued such behavior after he was told it was unwanted, is inaccurate. These allegations are neither contained nor suggested in the Post, which at most mentions "someone involved in Skepticon."

To the extent the Post accuses Dr. Carrier of sexual harassment "towards someone involved in Skepticon," this is true, and will be proven in court, if necessary. Ms. Lane will testify about the many occasions on which Dr. Carrier made unwanted sexual advances towards her, including but not limited to touching her knees and hugging her without permission; leering at her; asking her inappropriate questions; and making harassing and sexually-charged comments about and towards her. Dr. Carrier has himself publicly admitted to being "not as sensitive to the context of power dynamic as I should have been," when initiating sexual relationships with women, and "especially younger women." http://www.richardcarrier.info/archives/10912. There is a 16-year age gap between Dr. Carrier and Ms. Lane, who first met one another when Ms. Lane was 21. Evidence in the case will also consist of statements from third parties involved with Skepticon, including Skepticon speakers and attendees, who have also been sexually harassed by Mr. Carrier. In light of the conflicting evidence, Dr. Carrier will be unable to carry his burden of showing that Skepticon made a false statement of fact about him.

### The Statements Are Privileged

In addition to the truth defense, any statements to the effect that Dr. Carrier sexually harassed Ms. Lane or other Skepticon members/affiliates will be protected by the common interest privilege. As stated clearly in the Post, the allegations against Dr. Carrier were made to Skepticon "attendees, speakers, volunteers, vendors, organizers, and anyone else involved in Skepticon," in an effort to keep those individuals safe and prevent what Skepticon views as an "unacceptable risk" to the well-being and comfort of these individuals. The Post contained a hyperlink to Skepticon's Harassment Policy and discussed the steps Skepticon was taking to handle harassment complaints and to "protect[] everyone at Skepticon" from behavior like Dr. Carrier's.

Statements made to persons having a common interest in a particular subject matter are conditionally privileged from defamation liability. *See, e.g., Laun v. Union Elec. Co. of Mo.,* 350 Mo. 572 (1942); *Malone v. Eaton Corp.,* 187 F.3d 960 (8th Cir. 1999) (privilege applied to statements made by management official that supervisor had been fired "for a form of sexual harassment," made in a meeting held to reiterate the policy against supervisor-subordinate relationships and warn others about the consequences of violating the policy). As the Post statements were made by Skepticon to Skepticon participants, to warn Skepticon participants about violations of Skepticon's Harassment Policy, they are conditionally privileged.

### The Statements Were Made Without Actual Malice

Setting aside the applicable privilege and absolute defense of truth, Dr. Carrier is a public figure or limited public figure for the purpose of defamation liability in this matter, and as such will have to meet the heightened standard of showing that the Post statements were made with actual malice, i.e. with knowledge that they were false or with reckless disregard of whether they were false or not. *See New York Times Co. v. Sullivan,* 376 U.S. 254 (1964).

Dr. Carrier is undoubtedly a public figure or limited-purpose public figure for the purpose of defamation liability in connection with the Post statements. Dr. Carrier's website and Wikipedia page collectively describe him as "a world-renowned author and speaker" in the field of atheism and naturalism who "has frequently been a featured speaker at various skeptic, secular humanist, freethought, and atheist conventions, such as…the annual Skepticon convention" www.richardcarrier.info/about; https://en.wikipedia.org/wiki/Richard_Carrier. Dr. Carrier characterizes himself as a "role as a speaker and leader in this community." http://www.richardcarrier.info/archives/10912. As such, Dr. Carrier will undoubtedly be found by a court to be either a public figure or limited-purpose public figure in the Skepticon community, and in connection with the asserted defamation liability. *See, e.g., Greenbelt Cooperative Publishing Association, Inc. v. Bresler,* 398 U.S. 6 (1970) (public figure); *Cockram v. Genesco,* 680 F.3d 1046 (8th Cir. 2012) (limited-purpose public figure defined as one who voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues).

For the reasons discussed above – namely, because any statement allegedly indicating that Dr. Carrier sexually harassed someone involved in Skepticon, is true – Dr. Carrier will not be able to show that the Post statements were made with actual malice. His alleged defamation claim fails as a matter of law, for this additional reason.

### No Proximate Causation

Your letter vaguely alleges that Dr. Carrier has suffered damage to his reputation, but offers no support for that assertion. Dr. Carrier will not be able to show that any conduct by our clients proximately caused his alleged reputational damages, in light of his own postings about his concededly inappropriate behavior towards (younger) women on other occasions – any alleged reputational harm, simply cannot be shown to be more likely than not caused by Skepticon. Moreover, a trial of this matter will undoubtedly bring more publicity to Dr. Carrier's misconduct than has allegedly resulted from the short-lived publication of the Post on Skepticon.org, and any future damages that may result from Dr. Carrier's own publication of this matter via litigation, will not be recoverable.

### Dr. Carrier's Liability to Skepticon for Breach of Contract

You are hereby notified that Dr. Carrier is liable to Skepticon for breach of its Harassment Policy, as posted on its website at skepticon.org/policy/, and in effect when Dr. Carrier was a speaker at Skepticon events. By their participation in Skepticon conferences, attendees and speakers agree to be bound by Skepticon's policies, including the Harassment Policy that expressly prohibits "inappropriate physical contact…and unwelcome sexual attention." Dr. Carrier has breached that policy, and this has caused damage to Skepticon and its members, resulting Dr. Carrier's liability to Skepticon.

### Your Client's Demands

Your letter makes several demands upon our clients, including that they cease and desist from "defaming" Dr. Carrier, publish a full retraction of the Post statements, and reimburse Dr. Carrier for his alleged attorney's fees and costs. As our clients have no liability to Dr. Carrier for the Post statements (which, in any event, no longer exist on Skepticon's website), we cannot agree to these demands. Should your client wish to proceed with a lawsuit, our clients will vigorously defend themselves, including but not limited to on all grounds mentioned above, and may also seek relief against Dr. Carrier for claims that include, but are not limited to, breach of contract. Further, this letter constitutes our clients' demand that Dr. Carrier cease and desist from attending any future Skepticon events. Should you have any questions, please contact me or my colleague, Krista L. Baughman.

Best regards,

Harmeet K. Dhillon

**DHILLON LAW GROUP INC.**
177 POST STREET, SUITE 700 | SAN FRANCISCO, CA 94108 | 415.433.1700 | 415.520.6593 (F)