THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DR. RICHARD CARRIER,** | : | Case No. 2:16-cv-00906-MHW-EPD |
| Plaintiff, | : | Judge Michael H. Watson |
| v. | : | |
| **FREETHOUGHTBLOGS NETWORK, PAUL Z. MYERS, PH.D., THE ORBIT, STEPHANIE ZVAN, SKEPTICON, INC., LAUREN LANE,** and **AMY FRANK-SKIBA,** | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(B)(2) FOR LACK OF PERSONAL JURISDICTION; AND FRCP12(B)(3) FOR IMPROPER VENUE**

Defendants move to dismiss the complaint for lack of personal jurisdiction [Fed. R. Civ. P. 12(b)(2)] and improper venue [Fed. R. Civ. P. 12(b)(3)].

**1.0    Introduction**.

This is a defamation case involving Defendants with no connection to Ohio. In fact, even the Plaintiff himself only recently moved to Ohio (unbeknownst to the Defendants until this Complaint was filed). There is no personal jurisdiction over the Defendants as the Ohio long arm statute does not permit it. Even if this Court determines otherwise, the Due Process Clause would require dismissal. *See Fraley v. Estate of Oeding*, 138 Ohio St. 3d 250 (Ohio 2014) (the Ohio long arm statute does not reach the limits of due process, therefore, even if the long arm statue is satisfied, the more demanding Due Process clause can demand dismissal).

Plaintiff attempts to manufacture jurisdiction under *Calder v. Jones*,[1] but the *Calder* elements are not present. Even if *some* were, the facts of this case are significantly different than those in *Calder*.

---

[1]   As discussed below, even this attempt fails. *See* Section 2.3.3.2 below.

The Plaintiff moved to Ohio at approximately the same time as the alleged defamation occurred. None of the Defendants had any way to know that Plaintiff resided in this District. Defendants targeted no statements to the residents of Ohio. Defendants could not expect that statements published in Minnesota, Missouri, or Arizona about a man they knew to live in California, put them at risk of being haled into an Ohio court.

## 2.0 Argument

### 2.1. Facts

The Plaintiff in this action, Dr. Richard Carrier describes himself as a well-known lecturer, teacher, and author of several "notable" works.[2] Complaint, Dkt. No. 1, p.6 at ¶¶ 18 and 19. He holds a Ph.D. in the history of philosophy and his teachings focus on secularism, atheism, and feminism. *Id*. at pp. 2-3, ¶ 4. He professes, in his complaint, to be a practicing polyamorist. *Id*. at p. 7, ¶ 24. He raises this strange fact in his complaint because it appears to be his excuse for engaging in multiple acts of sexual misconduct, the discussion of which he prefers to censor through this lawsuit.[3]

Dr. Carrier formerly published a blog on Freethoughtblogs Network, where he is a well-known public figure. *Id*. at p. 3, ¶ 5. He was formerly a member of the Secular Student Alliance

---

[2] Defendants adopt these facts. As such a public figure Plaintiff must demonstrate actual malice, instead of mere negligence, to prevail on a claim of defamation. *See New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-280 (1964); *Talley v. WHIO TV-7*, 131 Ohio App. 3d 164, 170 (Ohio Ct. App., Montgomery County 1998). "Actual malice" is "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990). The burden is significant, as "the plaintiff must demonstrate, with convincing clarity, that the defendant published the defamatory statement" with actual malice. *Great Lakes Capital, Ltd. v. Plain Dealer Publ'g Co*., 2008-Ohio-6495, ¶26 (8th Dist.). That is, Plaintiffs must provide "clear and convincing proof," of actual malice. *See Street v. Nat'l Broad. Co*., 645 F.2d 1227, 1236 (6th Cir. 1981).

[3] Defendants pass no judgment on whatever Carrier's sexual practices may be in the privacy of his own relationships. However, the Defendants do have a right to expect that Carrier will refrain from inappropriate activity with young students at conferences, when that is one of the clearly enumerated rules at those conferences. Ultimately, this case never would have come about, had Dr. Carrier followed these simple and reasonable rules. Carrier himself confesses to violating these rules. *See* **Exhibit 1**, Richard Carrier, "How to Do Wrong Right, June 5, 2015, <http://www.richardcarrier.info/archives/7573> (last visited December 1, 2016), at subtopic "Bad Flirting."

2

Speakers' Bureau and he spoke frequently at Secular Student Alliance meetings both during his tenure on the Speakers' Bureau and after.  In 2010, 2011, 2012, and 2013, Dr. Carrier lectured at Skepticon, an annual skeptic and secular convention held at various venues in Springfield, Missouri.

Each of the individual Defendants have known Dr. Carrier in one capacity or another for at least several years.  During that time, each of the Defendants knew that Dr. Carrier lived in Northern California.  For example, Dr. Paul Myers did not often speak to Dr. Carrier about his personal life, but knew that he lived in the San Francisco Bay Area.  *See* **Exhibit 2**, Declaration of Paul Myers in Support of Defendants' Motion to Dismiss (hereinafter, "Myers Decl.") at p. 1, ¶ 4.

Similarly, Defendant Frank-Skiba believed Dr. Carrier had lived and was continuing to live in California.  *See* **Exhibit 3**, Declaration of Amy Frank-Skiba in Support of Defendants' Motion to Dismiss (hereinafter, "Frank-Skiba Decl.") at p. 1, ¶ 5.

The other Defendants knew that Dr. Carrier lived in the Bay Area for a long time and they had no idea that he had any plans to relocate.  Dr. Carrier and Defendant Lauren Lane were friends and he had once recommended her for an intern position with the Center of Inquiry.  Dr. Carrier's return address on his letter was a Richmond, California address.  *See* **Exhibit 4**, Declaration of Lauren Lane in Support of Defendants' Motion to Dismiss (hereinafter, "Lane Decl.") at p. 1, ¶ 4, *Exhibit A*.  All other correspondence between Carrier and Lane also showed that Carrier lived in Northern California.  *Id*. at *Exhibits B-D*.

Rebecca Hammond is the Director and Secretary/Treasurer of Skepticon.[4]  All communications between Skepticon, Inc. and Dr. Carrier place him in California, including invoices to Dr. Carrier in California.  *See* **Exhibit 5**, Declaration of Rebecca Hammond in Support of Defendants' Motion to Dismiss (hereinafter, "Hammond Decl.") at p. 2, ¶ 8, *Exhibit A,* and ¶ 9, *Exhibit B*.

---

[4]  She is expected to be Skepticon's 30(b)(6) witness.

Defendant Stephanie Zvan's testimony is the same.  She knew that Dr. Carrier lived in California because that is what it said on his website.  *See* **Exhibit 6**, Declaration of Stephanie Zvan in Support of Defendants' Motion to Dismiss (hereinafter, "Zvan Decl.") at p. 2, ¶ 6, *Exhibit A*, and ¶ 7, *Exhibit B*, and ¶ 8, *Exhibit C*.  Zvan also had communications with others who know the Plaintiff, all of whom understood him to reside in California (*Id*. at ¶ 9) and communications indicating Dr. Carrier worked with Camp Quest in California.  *Id*. at ¶ 10, *Exhibit D*.

Everyone who had contact with Dr. Carrier knew him as a Californian.  Carrier regularly made public statements about the fact that he lived there.  *See* Myers Decl. at pp. 1-2, ¶¶ 4-5; Frank-Skiba Decl. at p. 1, ¶ 5; Lane Decl. at pp. 1-2, ¶ 4; and Zvan Decl. at pp. 1-2, ¶ 5-10.  However, the Defendants could find no pre-suit private or public statements giving any sign that Dr. Carrier intended to move from California to Ohio.  None of the Defendants knew he moved to Ohio until after publishing the articles at issue in this case.  *See* Myers Decl. at p. 2, ¶¶ 6-7; Frank-Skiba Decl. at p. 1, ¶ 5; Lane Decl. at p. 2, ¶ 5; and Zvan Decl. at p. 2, ¶ 7.  Furthermore, even using the Plaintiff's methodology of conducting Google Trends® research, Dr. Carrier's reputation is primarily in his long-time-home of California.  *See* Section 2.2.3.2 below.

**2.2.  The Plaintiff's Google Trends "Data" is Unreliable**

Plaintiff Carrier creatively, but unsuccessfully, tries to manufacture *Calder*-effects jurisdiction by providing unauthenticated printouts from "Google Trends."

Despite the fact that it is a difficult-to-read printout, the Court can see on *Exhibit 20* to Plaintiff's Complaint that Dr. Carrier claims that there were apparently a lot of Google searches for his name from Ohio.  Dr. Carrier has done nothing to authenticate this supposed Google Trends search and has failed to account for how he came to these results.  Carrier strangely limited this search to July 12, 2016 to August 12, 2016.  This is a one-month period of time.  Interestingly enough, when the same search was conducted using the same date range, from a different computer, very different results were obtained.  *See* **Exhibit 7**, Declaration of Trey A. Rothell ("Rothell Decl."), at *Exhibit A*.

4

Dr. Carrier fails to explain why he believes the relevant time range for his Google searches should July 12, 2016 through August 12, 2016.  Even though the Complaint was filed on the 20th of September, the Plaintiff does not explain why he only did this search for this special, specific, and non-duplicable date range.  However, presumably by tailoring the search this way it seems to have given him the results he preferred at that time.  Nevertheless, those results could not be duplicated by the Defendants' investigator.  *See* Rothell Decl. at ¶ 7.

Additionally, by adjusting the parameters in Google Trends, we can actually get more accurate data.  In searching by "Metro area" (certainly a far more reasonable metric than "sub-region") it reveals that the greatest interest in "Richard Carrier" between Plaintiff's selected days – July 12, 2016 through August 12, 2016 – was highest in San Francisco/Oakland/San Jose, with Los Angeles in second place and New York City in third.  *See* Rothell Decl. at *Exhibit B*.  No Ohio metropolitan areas come into play at all.  *Id.*  This is consistent with what we already know.

In searching by "Metro" area over the past five years[5] it reveals that the greatest interest in "Richard Carrier" over the past five years is Los Angeles, California, quickly followed by San Francisco/Oakland/San Jose, California, with New York City coming up in third place.  *See* Rothell Decl. at *Exhibit C*.

If we search for "Richard Carrier" from the past 12 months, it flips the data and places San Francisco/Oakland/San Jose at the top of the list, with Los Angeles in second place and New York City in third.  *See* Rothell Decl. at *Exhibit D.*  If we search for the year prior to the allegedly defamatory statements from July 30, 2015 to August 1, 2016, we again come up with a spread of San Francisco/Oakland/San Jose at a score of 100, Los Angeles with a score of 61, and New York City in third with a score of 39.  *See* Rothell Decl. at *Exhibit E*.  Columbus doesn't even register.

Using the same search parameters as Plaintiff and the search term being Defendants' counsel, Marc Randazza, the "Sub Region" demonstrates that the greatest number of Google Searches came from California.  *See* Rothell Decl. at *Exhibit F.*  Meanwhile, Mr. Randazza has

---

[5]  This longer time frame certainly seems more likely to lead to statistically reliable metrics.

rarely set foot in California over the past year. Even though Mr. Randazza resides in and practices law in Nevada, and rarely visits California, it appears that if we adopt Dr. Carrier's perspective, personal jurisdiction for any suit involving Mr. Randazza's reputation would be proper in California, and not his home state of Nevada, where he is well-known to reside.

Finally, even if these results could be duplicated, and if they had any other indicia of reliability, how is one to know that Dr. Carrier did not fabricate these results himself? There are services available where automated searches can be purchased in order for Google Trends results to change. *See, e.g.*, **Exhibit 8**, Serpify;[6] **Exhibit 9**, Userator.[7] This is not to suggest that Plaintiffs' counsel would have dreamed of doing so, however Mr. Carrier's Google Trends results seem to demonstrate a very tailored unique result, which cannot be independently duplicated. However, if we search by metropolitan area rather than by some undefined "sub region," we find exactly what all of the other evidence suggests we would find – that is, that Dr. Carrier's reputation is most relevant exactly where we would expect: California.

### 2.3. Personal Jurisdiction

The plaintiff bears the burden of proving personal jurisdiction. *Air Products, Inc. v. Safetech Intl., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Determining whether personal jurisdiction exists requires two steps. *Id.* at 550; *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). First, the Court must ask whether the facts fit the state long-arm statute. *Air Products*, 503 F.3d at 550. Then, if necessary, the Court must determine if the exercise of jurisdiction meets due process. *Id. See also Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994), *cert. denied*, 15 U.S. 962 (1994).

#### 2.3.1. Ohio's Long-Arm Statute

Ohio's long-arm statute, Ohio Rev. Code § 2307.382, is narrower than the Due Process Clause. *Fraley v. Estate of Oeding*, 138 Ohio St. 3d 250, 257 (Ohio 2014) ("because Ohio's long-arm statute is not coterminous with due process, even satisfaction of the long-arm statute does not

---

[6] Available at <http://serpify.me/> (last accessed Dec. 1, 2016).
[7] Available at <https://userator.ru/> (last accessed Dec. 1, 2016).

justify the exercise of jurisdiction unless that exercise also comports with the defendant's constitutional right to due process."); *Goldstein v. Christiansen*, 638 N.E.2d 541, 545, n.1 (Ohio 1994). Accordingly, for jurisdiction to be proper, the Court must first apply Ohio Re. Code § 2307.382. Under the relevant portion of the statute:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

### 2.3.2. § 2307.382(A)(6) Analysis

Under Ohio Re. Code § 2307.382(A)(6), the only section of the long arm statute that could apply, the Defendants must have (1) caused a tortious injury in this state, (2) by doing something out of state with the purpose of injuring someone, (3) with the reasonable expectation that someone would be injured in Ohio. None of these elements are met.

#### 2.3.2.1. The First Two Elements Are Not Met

Although the Plaintiff need not prove his entire case at this time, he must show that the Defendants *caused a tortious injury in this state*. They can do no such thing. In the first instance, there was no tortious injury because Defendants were reporting on facts that they reasonably believed (and continue to believe) are true. To show injury, Plaintiff will need to prove by clear and convincing evidence that the Defendants published their statements with actual malice. *See* Footnote 2, above.

Freethoughtblogs, the Secular Student Alliance, and Skepticon, have strict conduct and harassment policies, which govern their writers, speakers, and participants. For example, Skepticon's conduct policy includes an eminently reasonable prohibition on "inappropriate physical contact, unwelcome sexual attention, and any other act that may cause harm to oneself or others." The policy also states that "[b]latant instances of racism, sexism, homophobia, or other stereotyping and harmful behaviors should be reported to conference staff immediately. 'Yes' means yes; 'No' means no; and 'Maybe' means no. Please accept no for an answer for any request

or activity. You are encouraged to ask for unequivocal consent for all activities during the conference. No touching other people without asking. This includes hands on knees, backs, shoulders—and hugs (ask first!)." Lane Decl. at ¶ 6.

Dr. Carrier was familiar with these standards. Indeed, in **his own words**, "*Dr. Carrier has for many years been an outspoken advocate for ethical conduct in the treatment of women and men, and an ardent defender of responsible, sex-positive feminism, and ethical non-monogamy, and as a crucial part of that advocacy, he has himself always respected anyone's stated boundaries, and would never subject anyone to harassment of any kind.*" Complaint, Dkt. No. 1, p. 7 at ¶25.

Nonetheless, by his own admission, Dr. Carrier violated the Secular Student Alliances prohibition on speakers making advances on students. See **Exhibit 1**. In May of 2015, in response to a complaint filed concerning Dr. Carrier's behavior, the Secular Student Alliance removed Dr. Carrier from their Speaker Bureau. Complaint, Dkt. No. 1, p.17 at ¶ 52.

Defendants reasonably believed the facts they reported on were true. They reported on those facts, with no intent to harm Carrier or his reputation, but to protect his possible future victims. These are matters of public concern and are about a public figure. Therefore, even if the facts are negligently incorrect, Defendants would only be liable if Plaintiff could establish Defendants published the statements with knowledge of their falsity or a reckless disregard for the truth. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *St. Amant v. Thompson*, 390 U.S. 727 (1968). *See also* cases cited in Footnote 2, above.

The facts Plaintiff alleged in his Complaint simply do not meet that standard. In fact, Carrier himself published facts that support the articles. See **Exhibit 1**, Richard Carrier, "How to Do Wrong Right, June 5, 2015, <http://www.richardcarrier.info/archives/7573> (last visited December 1, 2016), at subtopic "Bad Flirting." There simply is no tortious injury in this state.

### 2.3.2.2. Reasonable Expectation of Injury in Ohio

This element is severely lacking. Defendants did not know at all that Carrier moved to Ohio. Therefore, there could be no **reasonable expectation** that he would be injured here.

8

Knowledge that the Plaintiff resides in Ohio is necessary to establish a reasonable expectation of injury in the state. *See, e.g., Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81, 2010 Ohio 2551, 930 N.E.2d 784, 792 (Ohio 2010) ("When defamatory statements regarding an Ohio plaintiff are made outside the state yet with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied."); *Herbruck v. LaJolla Capital*, No. 19586, 2000 Ohio App. LEXIS 4668, 2000 WL 1420282, at *3 (Ohio App. Sept. 27, 2000) ("A fair reading of the complaint and documentary materials shows that Gallison committed tortious acts (alleged as conversion, fraud, and civil conspiracy) outside Ohio, while knowing full well that the stock involved was of an Ohio corporation."). For example, in *Thompson v. Moore*, 2009 U.S. Dist. LEXIS 95896, *5 (N.D. Ohio Oct. 15, 2009) the Defendant sent an allegedly libelous letter to Ohio's Attorney General – thus rendering ineffective any argument that the defendant did not actually target Ohio. *See also Specialized Mach. Hauling & Rigging, LLC v. D&L Transp., LLC*, 2009 U.S. Dist. LEXIS 37234, *27 (S.D. Ohio Apr. 20, 2009). Of course mailing a letter to Ohio would give rise to a reasonable inference that harm could occur here. But, in this case, these Defendants published about someone they knew to be a *Californian*. Ohio was simply never on any Defendant's radar.

To rely on Section (A)(6), the Plaintiff must show more than minimum contacts for jurisdiction to attach in a defamation case. *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1119 (6th Cir. 1994). They must show affirmative knowledge that Carrier resided here at the time of publication. Where a defendant engaged in tortious activity, "while knowing full well that the stock involved was of an Ohio corporation," this was satisfied. *Herbruck v. Capital*, 2000 Ohio App. LEXIS 4668, *9, 2000 WL 1420282 (Ohio Ct. App., Summit County Sept. 27, 2000); *see also Heffernan v. Options Assocs.*, 2001 Ohio App. LEXIS 2522, *5, 2001 WL 627615 (Ohio Ct. App., Hamilton County 2001) (court acknowledged that defendant's knowledge that a person lived in Ohio, might be evidence that a defendant might reasonably that his fraudulent activity might cause the Plaintiff harm in Ohio). However, if this element is lacking,

9

the long arm statute is unsatisfied. *See Kauffman Racing Equip., L.L.C. v. Roberts*, 2008-Ohio-4911, 119 Ohio St. 3d 1471, 894 N.E.2d 331.

Defendants had no knowledge that Carrier moved to Ohio.[8] At the time of publication, the Defendants all knew Carrier as a Californian. *See* § 2.1 *supra*. In fact, his identity with California was so long-standing and universally known that not a single one of the defendants had any clue that he had up and moved to Ohio until served with the complaint. Even the demand letters plaintiff's attorney sent did not mention that Carrier had moved to Ohio; they simply presumed that Carrier shopped around for a quality lawyer who happened to be in Ohio. In any event the letters were sent *after* the statements had been published. Complaint, Dkt. No. 1 at Exhibits 6-9. Defendants could not have reasonably expected he would be harmed in the state of Ohio, and jurisdiction fails under the Ohio's long-arm statute.

### 2.3.3. Due Process

In addition to satisfying the forum state's long-arm statute, to survive a motion to dismiss, the Plaintiff must show that exercising personal jurisdiction would not offend due process. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). General jurisdiction is present only when a defendant's contacts with the forum state are substantial, continuous, and systematic. *Id*. at 418; *Perkins v. Benguet Consolidated Mining Co*., 342 U.S. 437, 445-47 (1952). Specific jurisdiction exists when a plaintiff's cause of action arises from the defendant's contacts with the forum state. *Conti v. Pneumatic Prods. Corp*., 977 F.2d 978, 981 (6th Cir. 1992)

---

[8] Even if one of the corporate defendants happened to have provable institutional knowledge of Carrier's whereabouts, this could not be imputed to any members or employees of the corporate defendants. *Mohme v. Deaton*, 2006 Ohio 7042, 2006 WL 3833923, at *3 (Ohio App. 12 Dist. 2006) ("A corporate officer may not be held liable merely by virtue of his status as a corporate officer; however, the OCSPA does create a tort that imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities."); *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 U.S. Dist. LEXIS 44473, 2007 WL 1792332, at *2 (S.D. Ohio June 19, 2007) (acknowledging rule).

### 2.3.3.1. General Jurisdiction

The Court cannot exercise general jurisdiction over Defendants. As Plaintiff alleged: "Defendant freethoughtblogs' principal place of business is in the State of Minnesota" (*Id*. at p. 3, ¶ 5); "Defendant Myers lives in Minnesota" (*Id*. at p. 4, ¶ 7); Defendant the Orbit's principle place of business is in Minnesota (*Id*. at p. 4., ¶ 8); "Defendant Zvan resides in Minnesota" (*Id*. at p. 5, ¶ 11); "Defendant Lane resides in the State of Missouri" (*Id*. at p. 5, ¶ 13); Defendant Skepticon is "incorporated in the State of Missouri with its principal place of business in the city of Springfield" (*Id*. at p. 5, ¶ 11); and "Defendant Frank-Skiba resides in Arizona" (*Id*. at p. 6, ¶ 15).

None of the individual Defendants has ever resided in Ohio. Myers Decl. at p. 1, ¶ 2; Lane Decl. at p. 1, ¶ 3; Zvan Decl. at p. 1, ¶ 4; and Frank-Skiba Decl. at p. 1, ¶ 4. Nor have any of them ever worked or operated a business, paid taxes, filed a lawsuit, entered a contract, or registered to vote in Ohio. Each of them have only rarely visited Ohio. Lane Decl. at ¶ 3; Meyer Decl. at p. 1, ¶ 3; Zvan Decl. at ¶ 3; and Frank-Skiba's Decl. at p. 1, ¶ 4.

Since none of the Defendants reside in Ohio or has any systematic contacts with the state, Defendants are not subject to general personal jurisdiction of this Court.

### 2.3.3.2. Specific Jurisdiction

When it comes to due process and personal jurisdiction in a defamation case, the analysis must begin with *Calder v. Jones*, 465 U.S. 783 (1984). In that case, the Supreme Court said there was jurisdiction because:

> the allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California. In sum, California is the focal point both of the story and the harm suffered.

*Id*. at 788-89.

In *Calder*, the article was published in Florida, but focused on the California entertainment industry and actress Shirley Jones who lived in California, and whom the National Enquirer knew resided in California. The article was based on California sources and the newspaper had its

11

highest circulation by far in California. *Calder*, 465 U.S. at 789. In *Calder*, the authors aimed their intentional actions at California. They focused on a Californian, and discussed events that took place in California. It was, by all measures, as if they looked through a long-range viewfinder at California, and fired a long-range bullet into California, striking an object in California. This made it reasonable that the defendant would reasonably anticipate being haled into court in California. *Id.* at 789.

      This case is not *Calder*. First of all, the articles in question discuss Carrier's actions at conferences in locations other than Ohio. Secular Student Alliance conferences take place in various locations around the country. See **Exhibit 10**, Past Secular Student Alliance Conferences.[9] Skepticon occurs in Missouri. Hammond Decl. at p. 1, ¶ 6. None of the events discussed in any of the allegedly defamatory statements occurred in Ohio. *See* Zvan Decl. at ¶ 17; Frank-Skiba Decl. at ¶ 7. Second, the plaintiff's reputation in *Calder* was in the forum state since she lived there, and her industry (acting) was of course at ground zero in Los Angeles. In this case, Ohio is hardly known as the nerve center of polyamorous atheistic speaking and publishing. To the extent Carrier has any reputation in Ohio, it must certainly be quite new – given that he only recently moved to Ohio. At this point, it is highly unlikely that he can claim that his decades-old California reputation has somehow transformed into an Ohio interest overnight. Third, the focal point of the articles is not Ohio, but events in many different places – none of which are in Ohio. Meanwhile, in *Calder*, the focal point was clearly the forum state of California where the entertainment industry is centered. Fourth, Carrier has a nationwide (if not international) reputation that is not centered in Ohio. At the time the statements were allegedly made, Dr. Carrier had only been living in Ohio for a matter of days. Meanwhile, each of the Defendants believed Dr. Carrier remained in California. Lane Decl. at p. 1, ¶¶ 4-5; Myers Decl. at pp. 1-2, ¶¶ 5-7; Zvan at pp. 1-2, ¶¶ 5-11; and Frank-Skiba Decl. at p. 1, ¶¶ 5-6.

---

[9]    Available at <https://secularstudents.org/conference/past> (last accessed Dec. 1, 2016).

Accordingly, nobody could have reasonably known that the brunt of any harm (to the extent there is any) might be felt in Ohio. Even if there was foreseeability that there could be some circulation or effect in Ohio, that is not enough to create jurisdiction. *See Reynolds v. International Amateur Ath. Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (identical analysis).

As in *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), these Defendants' only contact with Ohio is this suit, because "plaintiff chose to reside there." 228 F.3d at 722-23. However, it is more egregious in this case because the Plaintiff chose to reside here very recently and *long after* the parties entered any kind of relationship. To establish a constitutionally supportable nexus with the forum state, the Plaintiff cannot simply move to a new state and then choose to bring suit there against out of state defendants. *See Kulko v. Superior Court of Cal*., 436 U.S. 84, 97 (1978) (no jurisdiction when case brought in new state after the parties' relationship began in another); *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1420 (10th Cir. 1988) (contacts with forum state were the result of plaintiffs moving to a new state after the legal relationship began); *Zenergy, Inc. v. Coleman*, No. 09-cv-00381-CVE-FHM, 2009 U.S. Dist. LEXIS 99617, 2009 WL 3571314, at *8 (N.D. Ok. Oct. 26, 2009) (noting that "[c]ourts have found no nexus between the defendants' contacts with the forum and the litigation where the plaintiff moved to the forum state after the relationship began"); *Sando v. Sando*, 1985 Ohio App. LEXIS 9606, (Ohio Ct. App. 1985) (parties entered into relationship, then plaintiff moved to Ohio).

None of these Defendants knew that this long-standing California resident had moved to Ohio at the time of publication. "And, without such knowledge, there can be no personal jurisdiction under the "effects" test, as "[k]nowledge of the plaintiff's residence is the crucial element" of express-aiming." *Pritz v. S. Cal. Edison Co*., 2013 U.S. Dist. LEXIS 104802, *11 (E.D. Mich. July 26, 2013) (dismissing claim where plaintiff moved to Michigan unbeknownst to the defendant).

### 2.3.3.2.1. Reasonableness

Even if the Court finds that a defendant purposefully directed actions at the forum state and that plaintiff's claims arose out of the defendants' activities in the forum, exercising jurisdiction still must be reasonable under the circumstances.

The Court examines several factors making this determination. They include: (1) the burden on the defendant to litigate in the forum state; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the case. *CompuServe*, 89 F.3d at 1268.

Where there is no showing of express aiming, it is unreasonable to expect a party to defend himself in a state with which he has no contacts. Ohio has little interest in being the forum to resolve a dispute that arose prior to or shortly after Plaintiff moved to the state, dealing with events that took place outside of Ohio, where there are no witnesses in Ohio, where the only connection to Ohio is that the Plaintiff chose to move here.

Nothing prohibits Plaintiff from obtaining relief by suing the Defendants in their home states. At least three other states have a greater interest than Ohio in resolving these claims:

(1) **California,** where Defendants believed Carrier lived at the time they published their allegedly defamatory statements, and where the anticipated 30(b)(6) witness for Skepticon, Inc. is physically located.

(2) **Minnesota,** where four defendants are located. Stephanie Zvan and Paul Myers reside there, and Freethoughtblog, LLC and The Orbit have their principal places of business there.

(3) **Missouri,** where there are two defendants. Lauren Lane resides there and Skepticon, Inc. is registered and has its principal place of business there.

Even if Defendants had expressly aimed activities toward Ohio and Plaintiff's claims arose from those contacts, it would nonetheless be unreasonable to sue these Defendants in Ohio.[10]

---

[10] If Jurisdiction is found, the Defendants also intend to raise the argument that these parties are improperly joined.

### 2.4. The Court Should Dismiss based on Improper Venue

Plaintiff alleges proper venue based on 28 U.S.C. § 1391(a)(2), stating that the Court enjoys venue under this statute because "all or a substantial portion of the events that gave rise to Plaintiff's claims accrued within the State of Ohio, including Defendants' express targeting of the Plaintiff in the State of Ohio, Defendants' publication and republication of the defamatory falsehoods in the district, the damage to Plaintiff's reputation suffered in the district, and Defendants' tortious interference with Plaintiff's business expectancies in the district." Complaint, Dkt. No. 1 at ¶ 3.

Plaintiff's reference to subsection (a)(2) is apparently a typographical error since the standard plaintiff refers to is from subsection (b)(2). Nonetheless, the facts do not support a proper finding of venue under any provision of 28 U.S.C. § 1391 which reads in relevant part:

> (b) Venue in general. A civil action may be brought in–
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue fails under subsection (b)(1), because none of the Defendants reside in this district.

Venue fails under subsection (b)(2), because despite Plaintiffs' unsupported allegations to the contrary, none of the events or omissions giving rise to Dr. Carrier's claims occurred in Ohio. *See* Zvan Decl. at ¶ 17; Frank-Skiba Decl. at ¶ 7. Nor is any property that is the subject of the litigation situated in Ohio. For the same reasons Plaintiffs' unsupported allegations of express targeting do not support personal jurisdiction, they can neither support venue.

Finally, venue cannot be established under subsection (b)(3) because, as discussed in detail *supra*, none of the Defendants is subject to the personal jurisdiction of the Court. The Court should dismiss this action for improper venue.

**3.0** **Conclusion**

Plaintiff failed to establish that this Court has personal jurisdiction over any of the named Defendants and therefore the Court must dismiss them from this action.  Because Plaintiff cannot cure this deficiency, the Court should make the dismissal *with* prejudice.  Because the Court has no personal jurisdiction over Defendants it must also (or alternatively) dismiss the Complaint based on improper venue.

Dated this 1st day of December, 2016.          Respectfully submitted,

/s/ Jeffrey M. Nye
Jeffrey M. Nye (0082247)
STAGNARO, SABA & PATTERSON CO. L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6714
(513) 533-6711-facsimile
jmn@sspfirm.com

Marc J. Randazza (*Pro Hac Vice*)
D. Gill Sperlein (*Pro Hac Vice* Pending)
RANDAZZA LEGAL GROUP, PLLC
4035 South El Capitan Way
Las Vegas, NV  89147
(402) 420-2001
(305) 437-7662 -facsimile

*Attorney for Freethoughtblogs Network, Paul Z. Myers, Ph.D., The Orbit, Stephanie Zvan, Skepticon, Inc., Lauren Lane, and Amy Frank-Skiba*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and accurate copy of the foregoing was served upon all parties via CM/ECF on December 1, 2016.

/s/ Jeffrey M. Nye
Jeffrey M. Nye (0082247)