# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DR. RICHARD CARRIER | : | |
| | : | |
| Plaintiff, | : | Case No. 22:16-cv-00906-MHW-EPD |
| | : | |
| -vs- | : | JUDGE  Michael H. Watson |
| | : | |
| FREETHOUGHTBLOGS NETWORK, | : | **PLAINTIFF'S BRIEF IN OPPOSITION** |
| PAUL Z. MYERS, PH.D., THE ORBIT, | : | **DEFENDANTS' MOTION TO DISMISS** |
| STEPHANIE ZVAN, SKEPTICON, INC., | : | **FOR LACK OF PERSONAL** |
| LAUREN LANE, and | : | **JURISDICTION AND IMPROPER** |
| AMY FRANK-SKIBA | : | **VENUE** |
| | : | |
| Defendants | : | |

Plaintiff **Dr. Richard Carrier** (hereinafter "Dr. Carrier" or "Plaintiff"), hereby submits the following Brief in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2) and for Improper Venue pursuant to FRCP 12(b)(3).

## I.    INTRODUCTION

Plaintiff respectfully requests this court to deny Defendants' Motion to Dismiss, since Plaintiff's Complaint contains sufficient allegations against the Defendants to state a prima facie showing of this Court's personal jurisdiction over Defendants.  This Court enjoys personal jurisdiction over the non-resident Defendants pursuant to Ohio's long-arm statute, codified as Ohio Revised Code 2307.382, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Defendants committed acts outside of the state of Ohio, intended to cause and causing injury in the state, including but not limited to the intentional and malicious publication of defamatory statements of and concerning an Ohio resident, whose professional activities are centered in the district.  Defendants' contacts with Ohio organizations and the Plaintiff, requires they defend the action in this jurisdiction, which comports with due process.

This Court should also deny Defendants' Motion based on their argument that this Court lacks proper venue. Here, this Court enjoys venue under 28 U.S.C. § 1391(b)(2), because all or a substantial portion of the events that gave rise to Plaintiff's claims accrued within the state of Ohio, including Defendants' express targeting of the Plaintiff in the state of Ohio, Defendants' publication and republication of the defamatory falsehoods in the district, the damage to Plaintiff's reputation suffered in the district, and Defendants' tortious interference with Plaintiff's business expectancies in the district. Absent compelling circumstances, courts afford the plaintiff's choice of forum strong deference. Maintaining the action in various other districts from which the Defendants reside (including Minnesota, Missouri, and Arizona) may be more convenient for individual Defendants, but the balance of convenience does not sufficiently favor any one district over Ohio. Venue is therefore proper.

## II.     FACTUAL BACKGROUND

Plaintiff, Dr. Carrier, is a Ph.D. in the history of philosophy from Columbia University, and author of numerous scholarly books and articles published by reputable publishing houses. Dr. Carrier has become well known to the public as a professional writer, lecturer, and teacher, and has created for himself a unique public personality and image. As all Defendants were well aware, Dr. Carrier has had professional relationships and valid ongoing business expectancies with Ohio organizations, among them the Secular Student Alliance ("SSA") and Camp Quest, both headquartered in Columbus, and numerous other Ohio organizations. *See* **Exhibit 1**, Affidavit of Dr. Richard Carrier in Support of Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (hereinafter, "Carrier Aff."), pp. 4-5, at ¶¶ 25-28, *Exhibits D-F, and Exhibit H*, and p. 8, at ¶ 42, and p. 10, at ¶ 51, and p. 12, at ¶ 69, and p. 14, at ¶ 79. These organizations have been his principal source of speaking

2

and direct sales income. By June 1, 2016, the Plaintiff completed his permanent relocation to Ohio. *See* Carrier Aff., p. 7, at ¶ 36). Dr. Carrier's move to Ohio from California was highly publicized, for months ahead of time. Announcements were clearly disclosed, and well publicized on the website belonging to Defendant Freethought Blogs Network ("FtB" or "FreethoughtBlogs"), Meetup.com, Dr. Carrier's blog, his website, his Facebook® and Twitter® pages, the booking page on his personal website, and by word of mouth, and various other manners. *See* Carrier Aff., pp. 5-7, at ¶¶ 29-35, *Exhibits I-P, & BB*.

Defendant Amy Frank-Skiba ("Frank-Skiba") is the former president of the Arizona State University chapter of the SSA. She is the author of a false and defamatory June 15, 2016 Facebook® post, and a gofundme® campaign on which she published additional false, defamatory, and outrageous allegations. In her Facebook® post, Defendant Frank-Skiba falsely alleged very serious charges concerning an alleged 2015 incident of sexual assault and sexual harassment. Her statements were expressly aimed at the Ohio-based Camp Quest, Ohio-based volunteers and parents, the Ohio-based wife of the Executive Director of the SSA, who is the head of Camp Quest, and the Ohio-based Plaintiff. *See* Complaint, Dkt. No. 1, pp. 15-16, at ¶¶ 46-48, *Exhibit 4*. On information and belief, Frank-Skiba actively monitored Dr. Carrier's Facebook® wall, prior to publishing her false statements, and would have seen the myriad announcements concerning his relocation to Ohio. *See* Carrier Aff., pp. 14-15, at ¶¶ 79-80.

Defendant The Orbit ("The Orbit") is a media site committed to, according to its mission statement, social justice, providing a platform for writing, discussion, activism, collaboration, and community. The Orbit exercises content control over the blogs it hosts. Defendant Stephanie Zvan ("Zvan") is a member of The Orbit, and a newspaper writer. Defendants Zvan and The Orbit authored a June 20, 2016 online story entitled, "Summarizing the Current

Allegations Against Richard Carrier" in which they claim personal knowledge of untrue allegations of sexual harassment. *See* Complaint, Dkt. No. 1, pp. 11-13, at ¶¶ 37-38, *Exhibit 2*.

Defendant Skepticon, Inc. ("Skepticon") was co-founded in 2008 by Defendant Lauren Lane ("Lane"), who currently serves as president, and has become one of the largest skeptic and secular conventions in the United States. Defendants Skepticon and Lane authored a June 20, 2016 story entitled, "Keeping Skepticon Safe: Richard Carrier To Be Banned." The article levels false and defamatory charges against Dr. Carrier concerning sexual harassment. *See* Complaint, Dkt. No. 1, pp. 14-15, at ¶¶ 42-44, *Exhibit 3*.

Defendant FreethoughtBlogs was co-founded in 2011 by member and Defendant Paul Z. Myers, Ph.D. ("Myers") to host Defendant Myers' blog, *Pharyngula*, and to host other blogs in his field (among them, Dr. Carrier's blog wherein his planned relocation to Ohio was announced). Defendant FreethoughtBlogs exercises content control over the blogs it hosts. *See* Complaint, Dkt. No. 1, p. 3, at ¶ 5, and p. 9, at ¶¶ 30-31, and p. 18, at ¶ 57. Defendants FreethoughtBlogs and Myers authored a June 21, 2016 story entitled, "Richard Carrier's blog," and authored the June 26, 2016 story entitled, "The FtB Ethics Committee on Richard Carrier." Their articles recount and republish untrue allegations of sexual harassment, and accuse Dr. Carrier of "*persistent*" sexual behavior "*in defiance of specific requests that he cease*." *See* Complaint, Dkt. No. 1, p. 8, at ¶¶ 26-28, and pp. 17-18, at ¶¶ 53-56, *Exhibit 1, and Exhibit 5*.

Defendants' statements were intentional and tortious, calculated to cause injury in Ohio. Defendants' stated purpose was to sever Dr. Carrier's professional affiliations with the SSA and with Camp Quest, and encouraged boycotts unless and until their purpose was realized. See Complaint, Dkt. No. 1, *Exhibit 4*. Failing to check neither facts nor alibis (*See* Carrier Aff., p. 16, at ¶ 84), Defendants' wrongful conduct was expressly aimed at Ohio resident Dr. Carrier, and

at Ohio organizations, The SSA, and Camp Quest.  That Defendants knew Dr. Carrier's residence moved to Ohio doesn't merely rest on conjecture or supposition, but on well-pled facts. *See* Carrier Aff., p. 8, at ¶ 41, and p. 12, at ¶¶ 68-69, and pp. 14-15, at 79-81.  And it can be reasonably characterized as the Defendants' intent to interfere with Dr. Carrier's business affiliations with the SSA and Camp Quest.  Defendants intended their out-of-state conduct to reach and harm Dr. Carrier's business operations in Ohio.  Defendants' express aim thus can be said to have reached into Ohio.

The focal point of the damage was Ohio, and Defendants' conduct therefore fulfills the requirement of causing a consequence in Ohio.  Owing to Defendants' false and defamatory statements, the SSA will no longer extend approval of Dr. Carrier's speaking engagements at SSA affiliate events and conferences, nor of Dr. Carrier's affiliation as brand endorser, nor allow the sale of his books as a vendor at SSA national conferences.  Also owing to Defendants' wrongful conduct, Camp Quest suspended several of Dr. Carrier's promotional and business projects, including an educational game, a science experiment expected to generate considerable publicity and a peer reviewed academic journal publication expected to advance the Plaintiff's professional reputation. *See* Carrier Aff., p. 16, at ¶¶ 84-86.  Moreover, Defendant FreethoughtBlogs blocked access to Dr. Carrier's blog, blocked Dr. Carrier from publishing content, and blocked the public's access to all previous publications at FreethoughtBlogs, seriously disrupting search engine visibility to market his body of work. *Id*., p. 17, at ¶ 87.

Defendants reasonably foresaw that the brunt of the injury would be felt in the forum state of Ohio.  On well-pled facts, the Defendants knew Dr. Carrier relocated to Ohio, and knew the SSA and Camp Quest were both headquartered in Ohio.  By expressly urging two Ohio organizations to end their affiliation with him, Defendants' intent was to do intentional harm to

5

Dr. Carrier's business in Ohio and to his professional reputation therein.  When viewed in a light most favorable to the Plaintiff, Dr. Carrier demonstrated that Defendants intentionally and tortiously sought to inflict harm to his profession, and knew that the effects of their conduct would be felt in Ohio, where Dr. Carrier lives and works.

On or about July 6 and July 26, 2016, the Plaintiff, through his Ohio legal counsel, sent cease and desist letters, with demands for a written retraction, to all Defendants by Certified U.S. Mail. *See* Complaint, Dkt. No. 1, p. 18, at ¶ 58, *Exhibits 6-9*.  Defendants refused Dr. Carrier's demands. *See* Carrier Aff., pp. 8-9, at ¶¶ 44-48, and pp. 10-11, at ¶¶ 52-54, and p. 13, at ¶¶ 72-74, and pp. 15-15, at ¶¶ 81-83, and p. 12, at ¶¶ 68-69, and pp. 14-15, at 79-81

On or about July 30, 2016, Defendant Zvan posted a follow-up response, in which she sustained her June 20 attacks, and claimed personal knowledge of a sixth incident, also alleging sexual harassment. *See* Complaint, Dkt. No. 1, p. 19-20, at ¶ 66, *Exhibit 17*.  Zvan's statements were more than mere opinion or rhetoric.  Rather, in her July 30 statement she referred to her previous story as " *. . . conservative in its presentation of **facts** . . .* " *Id.* (emphasis added).

Subsequent to Plaintiff's cease and desist letter, Defendant Frank-Skiba launched a gofundme® campaign, published a verbatim copy of the letter, and posted further false and wrongful allegations. *See* Complaint, Dkt. No. 1, pp. 20-22, at ¶¶ 70-73, *Exhibit 18*.

On or about September 1, 2016, Defendants Skepticon and Lane replied to Plaintiff's cease and desist letter, through counsel, sustaining and reaffirming their June 20 accusations, and threatening to counter-sue Dr. Carrier. *See* Complaint, Dtk. No. 1, p. 22, at ¶¶ 74-75, *Exhibit 19*.

As of August 15, 2016, Defendant's Internet articles garnered extensive comments and reactions.  Defendant Zvan's July 30 follow-up post received numerous Facebook® likes, including one from The Orbit member, co-owner, and Ohio resident, Miri Mogilevsky.  In

substantial numbers, readers believed to be true allegations of sexual harassment, a crime involving moral turpitude, and statements concerning Dr. Carrier's professional acumen and character.  Defendants' defamatory statements continue to be reported, repeated, and re-broadcast in Ohio and nationwide. *See* Carrier Aff., p. 4, at ¶ 24, *Exhibit Z*.  Defendants' statements stigmatize Dr. Carrier as guilty of serious criminal offenses, and allege behavior incompatible with conduct becoming his profession.  On well-pled facts, Defendants were aware, when they made their tortious statements, of Dr. Carrier's ongoing business relationships, including those with the SSA, the SSA's hundreds of affiliates, and with Camp Quest, and were aware of Dr. Carrier's permanent relocation to Ohio. *See* Carrier Aff., pp. 4-5, at ¶¶ 25-28, *Exhibits D-H*.  As Defendants' contacts with Ohio proximately resulted from their own actions that created a substantial connection with Ohio, Defendants must reasonably have anticipated being haled into Court in Ohio to answer for the truth of their wrongful statements.

Dr. Carrier's claims arise not only from defamatory statements, but Defendants' statements speak specifically to affiliations as between Dr. Carrier and two organizations well known by all Defendants to be headquartered in Ohio.  As Defendants repeatedly assert the defense of truth, the merits of the Plaintiff's claim address the very same issue, and seek to prevent future conduct and remedy the harm caused.  More specifically, Dr. Carrier argues that Defendants' statements are malicious and false, and that his professional reputation was slandered.  Accordingly, and also because the Plaintiff has alleged special damages suffered in Ohio (*See* Complaint, Dkt. No. 1, p. 26,  at ¶¶ 91-93), the action can be said to have arisen from Defendants' Ohio-related activities.

## III.    LAW AND ARGUMENT

### A.    Standard of Review for Defendants' Civ. R. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Civ. R. 12(b)(2), Plaintiff bears the burden of proving personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F. 3d 883, 887 (6th Cir. 2002). A court deciding a Rule 12(b)(2) motion may follow one of three procedural paths: (1) the motion may be decided upon affidavits alone; (2) the court may permit discovery to assist in rendering its decision; or (3) the court may conduct an evidentiary hearing to resolve any factual questions which may have been presented. *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991). When there is no evidentiary hearing, "Plaintiff's burden is relatively slight." *Union Central Life Insurance Co. v. Balian,* 2011 WL 1753620 (S.D. Ohio) citing *American Greeting Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988). "The plaintiff needs to make only a *prima facie*, or threshold, showing that personal jurisdiction exists." *Theunissen* at 1458. "Without an evidentiary hearing, the court may consider only the pleadings and affidavits submitted by the parties." CompuServe v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Notably, the Court is obligated to disregard any affidavit or factual assertions presented by the Defendants in this case:

> A court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal, because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.

*Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1459 (6th Cir. 1994).

Differences in the facts and allegations made by the Plaintiff and Defendants must be construed in favor of the Plaintiff. "If there is a discrepancy between the plaintiff's and defendant's allegations, the court must consider the information in a light most favorable to

plaintiff." *CompuServe* at 1262.  If the plaintiff makes its *prima facie* showing of jurisdiction, then "the motion to dismiss should be denied notwithstanding any controverting presentation by the moving party." *General Envt'l Science Corp. v. Horsfall,* 753 F. Supp. 664, 669 (N.D. Ohio 1990) (internal citation omitted).  "This essentially means that the Court must view the jurisdictional evidence in a light most favorable to the plaintiff." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 237, 638 N.E.2d 541.  Dismissal for lack of jurisdiction is proper only if all the specific facts relied upon by plaintiff collectively fail to state a *prima facie* case for jurisdiction. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).  Here, therefore, for the purpose of deciding Defendant's Motion to Dismiss, the facts must be viewed in a light most favorable to the Plaintiff.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity jurisdiction must find that (1) the long-arm statute and the applicable rule of civil procedure confer jurisdiction, and that (2) exercise of personal jurisdiction would not deprive the defendant of the right to due process under the Fourteenth Amendment to the United States Constitution. *Theunissen* at 1459.  Here, the Plaintiff has met both requirements.

**B.    Ohio's Long-Arm Statute Permits the Exercise of Personal Jurisdiction Over Defendants**

To justify the exercise of jurisdiction, a court must determine whether the state's long-arm statute is satisfied and whether granting jurisdiction would deprive the defendants' right to due process. *Goldstein* at 237.  Ohio's long-arm statute, R.C. § 2307.382(A)(6), provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
….
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might

9

reasonably have expected that some person would be injured thereby in this state;

When out-of-state statements concern Ohio activities and have the specific intent of harming an Ohio resident in Ohio, jurisdiction is proper under both Ohio's long-arm statute and the 14th amendment. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81.  Under Ohio R.C. § 2307.382(A)(6), and Civ.R. 4.3(A)(9) a court is permitted to exercise personal jurisdiction if the above requirements are met. *Clark v. Connor*, 82 Ohio St.3d 309, 313, 1998 Ohio 385, 695 N.E.2d 751.

In this case, the evidence supports a *prima facie* showing that Defendants intended to cause harm, or reasonably should have known their actions would cause harm in Ohio, and that this Court has personal jurisdiction over all Defendants.  The Plaintiff alleged claims for defamation per se (Counts I and II), tortious interference with a business expectancy (Count III), and intentional and negligent infliction of emotional distress (Counts IV and V).  The Plaintiff asserts each of these claims against each Defendant individually, based upon their isolated conduct.

Defendants contend that Ohio's long-arm statute does not confer personal jurisdiction because their wrongful, tortious statements were not directed or published here.  But even if Defendants' statements were not made within the territorial boundaries of Ohio, Defendants' false statements were most certainly received in Ohio, as the Plaintiff has sufficiently pled.  The tort of libel occurs in the locale where the offending material is circulated by the defendant to a third party. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790.  Here, on well-pled facts, Defendants' false and defamatory statements were published in Ohio, made with the purpose to injure Dr. Carrier's professional acumen.  Thus, the torts were

10

committed in Ohio, *Fallang v. Hickey*, 40 Ohio St. 3d 106, 107, and the long-arm statute permits

the exercise of personal jurisdiction over all Defendants in Ohio.

The Ohio Supreme Court, in *Kauffman Racing Equip.*, held that statements regarding an

Ohio company posted by a Virginia resident on the Internet supported jurisdiction under Ohio's

long-arm statute.  In *Kauffman*, the defendant argued that his defamatory statements against

Kauffman Racing were not made within the boundaries of Ohio.  However, the Court held:

> But even if Roberts did not publish or circulate his statements within
> the territorial boundaries of Ohio, he is not shielded from the reach of Ohio's
> long arm.  R.C. 2307.382 (A)(6) and Civ.R. 4.3(A)(9) permit a court to
> exercise personal jurisdiction over a nonresident defendant and provide for
> service of process to effectuate that jurisdiction if the cause of action arises
> from a tortious act committed outside of Ohio with the purpose of injuring
> persons, when the nonresident defendant might reasonably have expected that
> some person would be injured thereby in Ohio.

> Thus, even if we assume that Robert's alleged tortious conduct did not
> take place within the territorial boundaries of Ohio, he nonetheless "might
> reasonably have expected that [KRE] would be injured thereby in this state."

> When defamatory statements regarding an Ohio plaintiff are made
> outside the state yet with the purpose of causing injury to the Ohio resident
> and there is a reasonable expectation that the purposefully inflicted injury will
> occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied.

*Kauffman*, 128 Ohio St.3d at 87.

Plaintiff concedes that Defendants made their defamatory statements outside the

"territorial boundaries" of Ohio.  However, the facts as pled have shown, Defendants published

defamatory statements, directed at the Plaintiff and other Ohio residents, intended to inflict harm

in Ohio.  Defendants' statements were made with actual malice, i.e. with knowledge that they

were false or with reckless disregard of whether they were false or not.

 Defendants argue, at the time they published their wrongful statements, they had no

reason to believe Dr. Carrier moved to Ohio.  Though it strains imagination, Defendants contend

they thought Dr. Carrier still resided in California.  Incidentally, none of the Defendants reside in California and so, in any event, their conduct was extra-forum.  Defendants' claim is highly implausible, if not disingenuous, in light of the Plaintiff's sworn statements and exhibits that prove he openly disclosed the move to Ohio on his website and social media profile pages, in most cases months before permanently relocating his residence to Ohio on June 1, 2016. *See* Carrier Aff., pp. 5-7, at ¶¶ 29-35, *Exhibits I-P & BB*.  In *Kauffman*, the plaintiff was an Ohio business entity.  Here, Dr. Carrier is not an Ohio company, but he derives the lion's share of his livelihood from professional relationships with other Ohio-based organizations including, among many other Ohio organizations, the SSA, the SSA's hundreds of campus affiliates, Camp Quest, and its many regional affiliates. *See* Carrier Aff., pp. 4-5, at ¶¶ 25-26, and p. 7, at ¶ 36.

Relevant to this case however is that both the SSA and Camp Quest, with which Dr. Carrier has had long standing public relationships over many years, are both headquartered in Ohio, a geographical fact of which all Defendants were well aware. *See* Carrier Aff., p. 5, at ¶¶ 27-28, *Exhibits D-H*.  Defendant Frank-Skiba specifically addresses her defamatory post about the Plaintiff, the SSA, and Camp Quest to, "*Parents, younger people who may graciously volunteer for Camp Quest, a summer camp for kids*:" *See* Complaint Dkt. No. 1, Exhibit 4. There can be no doubt, Frank-Skiba intentionally focused her purposive conduct on Ohio.  In addition to the SSA and Camp Quest, she directly addressed other Ohio residents who might volunteer for Camp Quest, or enroll their children in Camp Quest.  Further, Defendant Frank-Skiba published statements concerning the "*wife of the Executive Director of the Secular Student Alliance*" and wrote, "*This woman is the head of Camp Quest*."  In point of fact, the woman is Amanda Metskas, and has been an Ohio resident since 2009. *See* Complaint Dkt. No. 1, *Exhibit 4*.  Defendants Lane, Skepticon, Zvan, The Orbit, Myers, and FreethoughtBlogs, subsequently

12

republished Frank-Skiba's statements as fact, made additional false and derivative statements, and referenced each other's statements with direct links. *See* Complaint Dkt. No. 1, *Exhibits 1-3*, and *5*. Defendants well knew, or should reasonably have been expected to know, given their knowledge and extensive history with Dr. Carrier, and with the SSA, and Camp Quest, that their statements would cause injury in Ohio. To claim otherwise is hardly plausible.

Dr. Carrier attached to his Complaint numerous evidentiary documents and sworn affidavits that plainly make a *prima facie* showing of jurisdiction. Since Defendants caused tortious injury to Ohio residents, by their conduct outside of Ohio, with the purpose of inflicting injury, when Defendants knew or might reasonably have expected that some Ohio resident would be injured, Ohio's long-arm statute permits the exercise of personal jurisdiction over all Defendants.

**C.  This Court's Exercise of Personal Jurisdiction Does Not Violate Defendants' Constitutional Right to Due Process**

"Ohio's long-arm statute is not coterminous with due process." *Kauffma*,at 81, quoting *Goldstein* at 238, fn1. Thus, although Ohio's long-arm statute confers jurisdiction over the Defendant in this case, an Ohio court cannot exercise personal jurisdiction if jurisdiction would violate Defendants Constitutional right to due process. "The United States Supreme Court noted in *Internatl. Shoe Co. v Washington* that due process is satisfied if the defendant has 'minimum contacts' with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kauffman* at 87, quoting *International Shoe Co. v. Washington*, 326 U.S. 310 , 316, 66 S.Ct. 154, 90 L.Ed. 95.

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). In the case at bar, based on the Defendants contacts with the state of Ohio, the Plaintiff

has plainly established a *prima facie* case that specific jurisdiction attaches to all Defendants. Specific jurisdiction applies when a state exercises personal jurisdiction in a suit arising out of or related to the defendant's contact with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed. 2d 404. Fn. 8. The Sixth Circuit has adopted a three-part test to determine whether the defendant's contacts with the forum state allow for specific jurisdiction. First, the defendant must "purposefully avail" himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must "arise from" the defendant's activities there. And finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See also*, *Bird v. Parsons*, 289 F.3d 865.

### 1. *The Defendants Have Purposefully Availed Themselves of the Privilege of Acting in Ohio or Causing a Consequence in Ohio*

"Purposeful availment is present when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *McGee v. Internatl. Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223.

Here, the Plaintiff's case is a defamation claim. The United States Supreme Court addressed purposeful availment with regard to jurisdiction in causes of action in defamation in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804. In *Calder*, a California resident and actress, Shirley Jones, brought suit against Florida-resident employees of the National Enquirer, a Florida corporation, for libel. The defendants were the writer and editor of an article

that was written in Florida and appeared in the National Enquirer. The court held that jurisdiction was proper in California because "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of [Jones'] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." *Id*. at 788-789.

The defendants in *Calder* expressly aimed their intentional and wrongful conduct at California, and knew the brunt of the harm would be suffered in California where the plaintiff worked and lived, and in which the defendant had its largest circulation. Under the circumstances, the defendants must reasonably anticipate being haled into court there to answer for the truth of their statements. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d 490. "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder* at 789-790.

The case at bar clearly satisfies the *Calder* test to show Defendants' "purposeful availment." First, based on well-pled facts, not on mere speculation, Defendants' statements were intentional and tortious, calculated to cause injury in Ohio. Defendants' stated purpose was to end the Plaintiff's professional affiliations with the SSA and Camp Quest, and encouraged a boycott unless and until their purpose was realized. See Complaint, Dkt. No. 1, *Exhibit 4*. Second, Defendants' wrongful conduct was expressly aimed at Ohio resident Dr. Carrier, and at Ohio organizations, The SSA, and Camp Quest. Defendants knew Dr. Carrier moved to Ohio.

15

Information about the Plaintiff's move to Ohio was clearly disclosed, months before the defamation began, on his website and social media profile pages. *See* Complaint Dkt. No. 1, p. 2 at ¶ 4, and p. 25 at ¶ 89; Carrier Aff., p. 5, at ¶ 26, and p. 5-7, at ¶¶ 29-36. Considering Plaintiff's status as a "public figure," it is reasonably expected that public information about his current residence could be found by a cursory internet search, and would certainly be ascertainable by Defendants claiming to be journalists investigating Dr. Carrier. *See* Complaint, Dkt. No. 1, p. 10, at ¶¶ 34-35; Carrier Aff., p. 11, at ¶¶ 55-56. Further, Defendants knew that the SSA and Camp Quest were located in Ohio, and they were aware of Plaintiff's affiliations with these organizations, which the Defendants discuss in their defamatory statements. *See* Carrier Aff., pp. 4-5, at ¶¶ 25-28; p. 7, at ¶ 38; p. 10, at ¶ 51; p. 12, at ¶ 69; p.14, at ¶ 79. The Defendants in this case intended their out-of-state conduct to reach and harm Dr. Carrier's business operations in Ohio (*See* Carrier Aff., pp. 16-17, at ¶ 86-87), and it can be reasonably characterized as the Defendants' intent to inflict harm to Dr. Carrier's business affiliations with the SSA and Camp Quest. Defendants' express aim thus can be said to have reached into Ohio.

Finally, Defendants reasonably foresaw that the brunt of the injury would be felt in the forum state of Ohio. On well-pled facts, the Defendants knew Dr. Carrier relocated to Ohio (*See* Complaint Dkt. No. 1, p. 25 at ¶89; Carrier Aff., p. 5, at ¶ 26, and pp. 5-7, at ¶¶ 29-36), and knew the SSA and Camp Quest were both headquartered in Ohio. Contrary to Defendants' argument that the Plaintiff's reputation was centered in California, attached to Dr. Carrier's Complaint are Google® Trends reports, showing the Plaintiff's name recognition and following heavily weighted in Ohio. *See* Complaint, Dkt. No. 1, p. 23, at ¶¶ 78-79, *Exhibits 20 & 21*; Carrier Aff., pp. 1-4, at ¶¶ 2-24, *Exhibits A-C, and Exhibit Z, and Exhibit AA*. Defendants' defamatory statements concerned Plaintiffs' activities in Ohio, including his affiliations with the SSA and

16

Camp Quest. Defendants' statements also alleged, among other things, corruption as between the Plaintiff, the Executive Director of the SSA, as well as the head of Camp Quest. As discussed *supra*, Defendant Frank-Skiba's statements on June 15, 2016, aimed to sever Plaintiff's affiliation with Camp Quest and SSA, and went so far as to specifically address and discourage parents from sending their children to Camp Quest, discourage volunteers, and to urge a boycott of the SSA. *See* Compliant, Dkt. No. 1, p.15 at ¶ 46, *Exhibit 4*. As also discussed, Defendants Lane, Skepticon, Zvan, The Orbit, Myers, and FreethoughtBlogs, also directed false, defamatory statements at Ohio residents insofar as they referenced Frank-Skiba's statements as fact, allegedly on personal knowledge. *See* Complaint, Dkt. No. 1, *Exhibits 1-3, and Exhibit 5*. Given that Plaintiff resided in Ohio, which Defendants all knew, and given that the SSA and Camp Quest are headquartered in Ohio, which Defendants all knew, and given that Defendants specifically addressed and referred to Ohio residents in their defamatory articles and posts, when viewed in a light most favorable to the Plaintiff, Dr. Carrier has made a *prima facie* showing that satisfies the *Calder* effects test. Defendants intentionally and tortiously sought to inflict harm to his profession, and knew that the effects of their conduct would be felt in Ohio, where Dr. Carrier lives and works. Thus, Defendants purposefully availed themselves of the privilege of conducting activities within Ohio.

## 2. *Plaintiff's Cause of Action Arises Out of Defendants' Ohio-Related Activities*

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Bird* at 875, quoting *CompuServe* at 1267. The Sixth Circuit held a "lenient standard * * * applies when evaluating the 'arising from' criterion." *Id*. This "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that

the cause of action, of whatever type, have a substantial connection with the defendant's instate activities.'" (Emphasis added in *Third Natl.*) *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091, quoting *S. Machine Co.* at 384, fn. 27.

Dr. Carrier's claims arise not only from defamatory statements, but Defendants' statements speak specifically to affiliations between Dr. Carrier and two Ohio organizations well known to all Defendants. Defendants' contacts with Ohio include (1) statements directed at the Plaintiff, an Ohio resident, (2) statements directed at the SSA, an Ohio-based organization, and (3) statements directed at Camp Quest, an Ohio-based organization. *See* Carrier Aff., p. 5, at ¶¶ 26-28, *Exhibits D-H*. As Defendants repeatedly assert the truth defense, the merits of this case address the same question. Accordingly, and because Dr. Carrier alleged special damages suffered in Ohio (*See* Complaint, Dkt. No. 1, p. 26, at ¶¶ 91-93), caused by Defendants' conduct, the action can be said to have arisen from Defendants' Ohio-related activities.

Defendants argue "the Plaintiff cannot simply move to a new state and then choose to bring suit there against out of state defendants." Defendants' Motion to Dismiss, Dkt. No. 10, p. 13. While Dr. Carrier's action in moving to a new state is arguably at least one of several but-for causes of this lawsuit, what he seeks is relief from the Defendants' actions, and the consequences flowing directly from the Defendants' actions.

In *CompuServe*, the court held that a defendant's threat to sue constituted a contact with Ohio, and applied a proximate cause standard to determine whether the plaintiff's claim arose from that contact. The court noted that the defendant's actions threatened harm to the economic livelihood of the plaintiff, and it was that threat the plaintiff sought to eliminate through its suit. Here, on September 1, 2016, Defendants Skepticon and Lane, through counsel, sent to Plaintiff, in Ohio, notice of alleged breach of Skepticon's Harassment Policy, pursuant to the same

18

malicious and false accusations at issue in this case. *See* Complaint, Dkt. No. 1, p.22, at ¶ 74, *Exhibit 19*. Accordingly, Plaintiff seeks relief not merely from threats, but from actual restraints on his business resulting from Defendants' actions.

Defendants' actions are contacts with Ohio, related to the "operative facts of the controversy." Defendants actions, and the corresponding injury in Ohio, satisfy the purposeful availment requirement, form the very basis of the Plaintiff's claims, and satisfy the "arisen from" requirement established by the Sixth Circuit in *Southern Machine Co.*, 401 F.2d 374. Therefore, the Plaintiff has made a *prima facie* case that its cause of action has "arisen from" Defendants' contacts with the forum state of Ohio.

### 3. *The Exercise of Specific Jurisdiction is Reasonable*

Under the third prong of the *S. Machine Co.* test, acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird* at 874, quoting *CompuServe* at 1268. Courts consider several factors relevant to the reasonableness inquiry, including the interest of the forum state, the burden on the defendant, the Plaintiff's interest in convenient and effectual relief, the judicial system's interest in efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. *Id.*

"A court first must consider Ohio's interest in the controversy." *Kauffman* at 93, quoting *In-Flight Servs. Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 232 (C.A.6, 1972). "Ohio has a legitimate interest in protecting the business interests of its citizens…." *Bird* at 875. Here, Ohio plainly has an interest in protecting Plaintiff's business interests, especially since much of those business interests involve other Ohio organizations (the SSA and Camp Quest). "The United

States Supreme Court has indicated that a high degree of unfairness is required to erect a constitutional barrier against jurisdiction," especially in a case in which the defendant has intentionally directed his activity at forum residents and the effects of the activity occur in the forum state. *Kauffman* at 94, citing *Calder* at 788-798.  Nowhere in Defendants' Motion to Dismiss do they assert a degree of unfairness in litigating the case in Ohio -- certainly not any degree of unfairness sufficient to overcome Ohio's interest in protecting the business interests of its residents and organizations.

      As to the Defendants' burden, the Defendants all claim (vigorously) they thought Dr. Carrier was a resident of California at the time they published their tortious statements.  Not one of the Defendants reside in California.  By implication, Defendants indicate their willingness to litigate in a state other than their own.  Defendants have not argued that their defense would be prejudiced in Ohio, nor burdened in any other way.  The Plaintiff's burden, however, in litigating this suit in one or more other states might be so burdensome as to practically relinquish the claim.  Ohio is the best forum to litigate the Plaintiff's claims, and to serve the judicial system's interest in obtaining efficient resolution of controversies.  Considering the states' shared interest in fundamental social policies, Defendants' intentional and malicious conduct went well beyond threats.  Defendants purposefully caused the cancellation of Dr. Carrier's business expectancies, and threatens the future of his career, as his professional acumen has been smeared.

      Viewing the evidence in a light most favorable to the Plaintiff, Ohio's long-arm statute confers jurisdiction over all Defendants, and an exercise of jurisdiction by this Court will not deprive the nonresident Defendants of their right to due process of law under the Fourteenth Amendment to the United States Constitution.  The Plaintiff has made a sufficient showing that all Defendants caused tortious injury in Ohio by acts committed outside of Ohio, with the

intended purpose of injuring Dr. Carrier.  Defendants' false and defamatory statements specifically targeted a known Ohio resident, and the causes of action arise from the substantial connection with the defendant's instate activities.  Defendants repeatedly assert the truth defense. The merits of this case address that very issue, and seek to remedy the harm.  This honorable Court must not allow out-of-state defendants to exploit internet technology and at the same time avoid accountability for their intentional and wrongful conduct.

**D.      Venue is Proper Under 28 U.S.C. § 1391(b)(2)**

28 U.S.C. § 1391(b)(2) provides in pertinent part:

(b) Venue in general.–A civil action may be brought in–

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

This Court enjoys venue under 28 U.S.C. § 1391(b)(2) because all or a substantial portion of the events that gave rise to Dr. Carrier's claims accrued within the state of Ohio, including Defendants' specific targeting of the Plaintiff's business affiliates in Ohio, Defendants' publication and republication of defamatory falsehoods in the district, the damage to Plaintiff's reputation suffered in the district, and Defendants' tortious interference with Plaintiff's business expectancies in the district.  On well-pled facts, moreover, the Defendants colluded and collaborated to defame Dr. Carrier. *See* Carrier Aff., p. 8, at ¶ 43, *Exhibits Q-S*, and p. 9, at ¶¶ 47-48, *Exhibits T-U.*  Courts recognize that a plaintiff is not required to choose the "best" venue. The question for the court is whether the Plaintiff chose any forum with a substantial connection to the claim, regardless of whether other forums exist with greater connections. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

The Court must look at the entire progression of the underlying claim rather than focus solely on the matters that gave rise to the filing of the action, including where the relevant wrongful action occurred and where the alleged harm occurred. *See First of Michigan Corp.* at 264 (finding that district court erred when it determined that venue was improper based on a single occurrence that directly gave rise to the plaintiff's action rather than considering whether the forum plaintiffs chose had a substantial connection their claims).  As discussed *supra*, Ohio has a substantial connection to each of Plaintiff's claims, against each of the Defendants, since Defendants directed their actions at residents and organizations in Ohio, and Defendants' conduct as alleged in Plaintiff's Complaint caused substantial injury within this judicial district.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss for lack of personal jurisdiction, on the grounds that the Plaintiff made a *prima facie* showing of facts sufficient to justify specific jurisdiction over all Defendants in this matter.  Further, the Court should deny Defendants' motion based on improper venue as the Plaintiff has shown this judicial district has a substantial connection to the Plaintiff's claims and injury.

Respectfully Submitted,

 /s/ Jeffrey T. Perry
Jeffrey T. Perry (0088989)
CAMPBELL PERRY, LLC
7240 Muirfield Drive, Suite 120
Dublin, OH  43017
(614) 668-8442
(614) 675-2210  fax
*jeff@campbellperrylaw.com*

*Counsel for Plaintiff*
Dr. Richard Carrier, Ph.D.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 22'nd day of December, 2016, a copy of the foregoing was filed using the CM/ECF that will send a notice of electronic filing to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail, postage prepaid.


By:     <u>/s/ Jeffrey T. Perry</u>
        Jeffrey T. Perry
        Supreme Court No.:  0088989

        *Counsel for Plaintiff*
        Dr. Richard Carrier, Ph.D.