UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dr. Richard Carrier,

    Plaintiff,

    v.                                   **Case No. 2:16-cv-906**

**FreethoughtBlogs Network,** *et al.*,       **Judge Michael H. Watson**

    **Defendants.**                  **Magistrate Judge Deavers**

## OPINION AND ORDER

Defendants move to dismiss this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and improper venue under Federal Rule of Civil Procedure 12(b)(3). ECF No. 42. Defendants request an evidentiary hearing. ECF No. 38. For the following reasons, the Court **DENIES** Defendants' request for an evidentiary hearing and **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction.

## I.   FACTS

On September 20, 2016, Dr. Richard Carrier ("Plaintiff") filed this lawsuit against FreethoughtBlogs Network ("FreethoughtBlogs"), Dr. Paul Myers ("Dr. Myers"), The Orbit, Stephanie Zvan ("Ms. Zvan"), Skepticon Inc. ("Skepticon"), Lauren Lane ("Ms. Lane"), and Amy Frank-Skiba ("Ms. Frank-Skiba") (collectively, "Defendants") for defamation per se, tortious interference with a business expectancy, intentional infliction of emotional distress, and negligent

infliction of emotional distress. ECF No. 1. None of the Defendants are Ohio residents. Defendants are from Arizona, Minnesota, and Missouri.[1]

Plaintiff is an online lecturer, blogger, and author of numerous scholarly books and articles. *Id.* at 6. He has become well known to the public throughout the United States as a professional writer, lecturer, and teacher. *Id.* Plaintiff has had professional relationships with organizations that include FreethoughtBlogs, Skepticon, Camp Quest, Secular Student Alliance ("SSA"), and several affiliates of Camp Quest and SSA. *Id.* at 7. Plaintiff stipulates to his status as a public figure. Carrier Dep. 24, ECF No. 41.

In May 2015, Ms. Frank-Skiba, former president of the Arizona State University SSA chapter, filed a complaint with the SSA alleging that Plaintiff violated the SSA's policy against fraternization (i.e., expressing romantic interest in a student while a member of the SSA Speaker's Bureau). Compl. 17, ECF No. 1. In August 2015, the SSA removed Plaintiff from their Speaker's Bureau. *Id.*

Plaintiff was a long-time resident of California before he moved to Columbus, Ohio, on May 31, 2016. *Id.* at 27. All Defendants began their relationship with Plaintiff when he lived in California. Plaintiff alleges that Defendants knew he moved to Ohio because he blogged about it multiple times

---

[1] Ms. Frank-Skiba is an Arizona resident. Compl. 5, ECF No. 1. FreethoughtBlogs and The Orbit have their principal places of business in Minnesota, and Dr. Myers and Ms. Zvan are Minnesota residents. *Id.* at 3–5. Ms. Lane resides in Missouri, and Skepticon is incorporated in Missouri. *Id.* at 5.

and announced it on Facebook and Twitter. Carrier Dep. 45, ECF No. 41; Memo in Opp. 3, ECF No. 40.

A few weeks after Plaintiff moved, on June 15, 2016, Ms. Frank-Skiba posted statements on Facebook relating to an alleged 2015 incident of sexual assault and sexual harassment by Plaintiff. Compl. 15, ECF No. 1. The post is addressed to "Parents, and younger people who may graciously volunteer for Camp Quest, a summer camp for kids." *Id.*

On June 20, 2016, an article written by Ms. Lane, founder and President of Skepticon, was published on skepticon.org, titled "Keeping Skepticon Safe: Richard Carrier to be Banned." *Id.* at 14. On the same day, a post titled "Summarizing the Current Allegations Against Richard Carrier," written by Ms. Zvan was published on the-orbit.net. Dr. Myers, founder of FreethoughtBlogs Network, authored a June 21, 2016 story titled "Richard Carrier's blog" and is also responsible for publishing a June 26, 2016 story titled "The FtB Ethics Committee on Richard Carrier." *Id.* at 4. Each of these articles discuss claims of alleged sexual harassment and unwelcome behavior by Plaintiff.

Plaintiff had a blog on FreethoughtBlogs, a network that hosts blogs in the atheist/secular field, but on June 21, 2016, FreethoughtBlogs blocked Plaintiff's access. *Id.* at 17. Plaintiff then relocated his body of work to a domain of his own. *Id.* FreethoughtBlogs removed Dr. Carrier's content without rerouting links to the new domain. *Id.*

Around July 6 and July 26, 2016, Plaintiff, through counsel, sent cease and desist letters to Defendants demanding, among other things, a full written retraction. *Id.* at 18. Defendants refused each of Dr. Carrier's demands. *Id.* at 19. On July 30, 2016, Ms. Zvan posted a response on social media, reaffirming her previous statements. *Id.* at 19–20.

After receiving the cease and desist letter, a gofundme page was created by friends of Ms. Frank-Skiba to help raise funds for her defense to this lawsuit. *Id.* at 20–21.

Plaintiff avers that the statements discussed above were "reported, republished, repeated, and/or re-broadcast in Ohio and nationwide, via social media and web blog." *Id.* at 22.

Defendants moved to dismiss for lack of personal jurisdiction and improper venue, ECF No. 10, and moved for jurisdictional discovery and an evidentiary hearing, ECF No. 23. Plaintiff moved to equitably toll the statute of limitations for one year if the Court grants Defendants' motion to dismiss for lack of jurisdiction and improper venue. ECF No. 31. The Court granted Defendants' motion for discovery limited to the issue of personal jurisdiction[2] and denied Defendants' motion to dismiss without prejudice to refiling after completion of jurisdictional

---

[2] To the extent Plaintiff argues that Defendants failed to provide certain substantive responses to written requests for discovery, such an argument should have been previously raised. *See* Discovery Order, ECF No. 35 ("If the parties are unable to reach an agreement on any matter related to discovery, they are **DIRECTED** to arrange a conference with the Court."). In any event, the challenged written requests do not appear to be relevant to the limited issue of personal jurisdiction.

discovery.  ECF No. 33.  The Court also denied without prejudice Plaintiff's motion to toll as moot.[3]  ECF No. 37.  The parties were instructed to file a joint notice as to whether each side believes that the Court should hold an evidentiary hearing regarding personal jurisdiction.  ECF No. 35.  Defendants request an evidentiary hearing, and Plaintiff opposes.  ECF No. 38.  The Court then ordered the parties to brief the motion to dismiss so that the Court could determine whether the record is sufficiently developed to rule on Defendants' motion to dismiss without an evidentiary hearing.  ECF No. 39.

## II.    STANDARD OF REVIEW

Plaintiff has the burden of proving personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  If the Court rules on a Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."  *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).  "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary."  *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006).

---

[3] In denying Plaintiff's motion to toll without prejudice, the Court indicated Plaintiff's motion likely was not properly addressed to this Court and advised that any re-filed motion to toll should address with citation to authority why a motion to toll is properly made to this Court rather than any court in which Plaintiff may eventually re-file his suit. *See* ECF No. 37.

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen*, 935 F.2d at 1458). Similarly, even if there has been discovery, in the absence of an evidentiary hearing, a court will generally apply a *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) ("[A] 'court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal,' . . . because we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.'").

The *prima facie* standard "loses some of its significance, however, where . . . the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997); *see also Dean*, 134 F.3d at 1272 ("[W]e would not use

[the *prima facie*] standard if the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery.").[4]

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Because "Ohio's long-arm statute is not coterminous with federal constitutional limits," to establish a *prima facie* case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008)); *Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010)).

## III.   ANALYSIS

### A. Ohio's Long-Arm Statute

The Court must first analyze whether the requirements of Ohio's long-arm statute are satisfied. "Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir.

---

[4] The *prima facie* standard may lose some of its significance because there has been jurisdictional discovery in this case. Nevertheless, the Court is not convinced that Plaintiff made even a *prima facie* showing that personal jurisdiction exists over any of the Defendants.

2012).  In pertinent part, the Ohio long-arm statute, Ohio Revised Code

§ 2307.382, provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Therefore, Plaintiff must make a *prima facie* showing that Defendants (1)

caused a tortious injury in this state, (2) by doing something out of state with the

purpose of injuring someone, (3) with the reasonable expectation that someone

would be injured in Ohio.  "Although this Circuit has not had much occasion to

consider the contours of § 2307.382(A)(6), the district courts have given it

considerable attention and generally 'taken a broad approach' to its application."

*Schneider*, 669 F.3d at 700.

Plaintiff cites to *Kauffman*, in support of his argument that Ohio's long arm-

statute applies to Defendants.  930 N.E.2d 784.  In *Kauffman*, the out-of-state

defendant made several allegedly defamatory statements on the internet about

an Ohio company, which maintained its sole business operations and office in

Ohio and whose reputation was centered in Ohio.  *Id.* at 796.  The statements

also concerned the plaintiff's activities in Ohio.  *Id.*  Ultimately, the Ohio Supreme

Court concluded that these facts were sufficient to establish jurisdiction under

Ohio's long-arm statute and held: "When defamatory statements regarding an

Ohio plaintiff are made outside the state yet with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied." *Id.* at 792.

Here, Plaintiff avers that Defendants' allegedly defamatory statements caused injury to Plaintiff, an Ohio resident, and were aimed at Plaintiff, as well as SSA and Camp Quest, organizations headquartered in Ohio.

It is undisputed that all Defendants began their relationship with Plaintiff when he lived in California. It is also undisputed that at the time the allegedly defamatory statements were made, Plaintiff had only been living in Ohio for, at most, a few weeks.

Plaintiff provided evidence that he announced on social media and blogs that he was moving to Ohio prior to the alleged defamation. *See* ECF No. 17-10 — ECF No. 17-17. Plaintiff alleges that Defendants knew he moved to Ohio at the time Defendants made the statements because his move was widely known based on these internet announcements. Carrier Dep. 30, 45, ECF No. 41. However, Plaintiff concedes in his deposition that he has no evidence that Defendants Ms. Lane, Skepticon, Dr. Myers, FreethoughtBlogs, Ms. Zvan, and The Orbit saw his online posts regarding his move. Carrier Dep. 45–46, ECF No. 41. Plaintiff does not provide any further evidence or factual assertions that any

of these Defendants knew that he moved to Ohio at the time the alleged defamatory statements were made.[5]

Unlike in *Kauffman*, Plaintiff essentially has provided almost no evidence or factual allegations to support his conclusion that these Defendants knew he became an Ohio resident a few weeks before the statements were made. Without any evidence or specific factual allegations to support Plaintiff's conclusory statment that Defendants Ms. Lane, Skepticon, Dr. Myers, FreethoughtBlogs, Ms. Zvan, and The Orbit knew Plaintiff was an Ohio resident when they made the allegedly defamatory statements, Plaintiff cannot make a *prima facie* showing that these Defendants had a reasonable expectation of injuring Plaintiff in Ohio.

With respect to Ms. Frank-Skiba, Plaintiff argues she "must have seen" the announcements concerning his relocation from California to Ohio because she looked at other posts on his Facebook page around the same time. *Id.* at 46. As evidence, Plaintiff points to Ms. Frank-Skiba's allegedly defamatory Facebook post, which contains a screenshot of Plaintiff's Facebook page. *Id.*; *see also* ECF No. 17-31. When viewing the evidence in a light most favorable to Plaintiff

---

[5] Plaintiff does allege that he informed Defendants FreethoughtBlogs and Dr. Myers that he permanently relocated to Ohio in a phone call on June 21, 2016. Carrier Dep. 92, ECF No. 41. However, Plaintiff admits that this phone call occurred after the Defendants made the alleged defamatory statements. *Id.* at 96–97. Plaintiff also claims that Ms. Zvan and The Orbit knew he moved to Ohio before he filed this lawsuit but does not provide any evidence that they knew prior to publishing the alleged defamatory statements. *Id.* at 45–46, 92.

and without weighing the contradicting assertions by Ms. Frank-Skiba, it could be inferred that Ms. Frank-Skiba knew that Plaintiff had moved to Ohio when she made the allegedly defamatory post and therefore made the allegedly defamatory statements with the reasonable expectation that it could cause injury to Plaintiff in Ohio.

Plaintiff also argues Defendants intended their extra-forum conduct to reach and affect Plaintiff's business operations in Ohio because Defendants knew SSA and Camp Quest were organizations headquartered in Ohio, knew they were affiliated with Plaintiff, and Defendants urged those Ohio organizations to end their affiliation with him. Ms. Frank-Skiba addressed her post to "parents, and younger people who may graciously volunteer for Camp Quest, a summer camp for kids." ECF No. 1-4. However, the other Defendants' posts were not addressed to any specific audience.

Even if each Defendant did intend for their publications to persuade SSA and Camp Quest to end their affiliation with Plaintiff, there is no indication that the harm was actually targeted at Plaintiff's business operations in Ohio. Although SSA and Camp Quest are organizations headquartered in Ohio, Plaintiff admits that both Camp Quest and SSA are nationwide organizations with locations and events in many states. Carrier Dep. 38, 66, ECF No. 41. In fact, the only Camp Quest that Plaintiff visited was in California in 2005. *Id.* at 38.

Unlike in *Kauffman* where the Ohio company maintained its sole business operations and office in Ohio, and whose reputation was centered in Ohio,

Plaintiff did not provide any evidence that anyone would associate these organizations or Plaintiff's business operations with Ohio given the variety of locations and the nationwide scope of SSA and Camp Quest. The record also reflects that on the same day that some of the alleged defamatory statements were made, Plaintiff publicly minimized his ties to these organizations, stating: "I am not an employee of either Camp Quest or the SSA, or any of their affiliates. Nor am I on their boards of directors or speakers' bureaus. I have rarely volunteered for them." ECF No. 23-1.

Therefore, the Court concludes that Plaintiff has not made a *prima facie* showing that personal jurisdiction exists under Ohio's long arm statute over the following Defendants: Ms. Lane, Skepticon, Dr. Myers, FreethoughtBlogs, Ms. Zvan, and The Orbit. With respect to Ms. Frank-Skiba, Plaintiff is arguably able to make a *prima facie* showing that Ohio's long-arm statute applies to her. However, even if Plaintiff has made such a showing, Plaintiff is unable to show that exercising personal jurisdiction over Ms. Frank-Skiba, or any of the Defendants, comports with Due Process under the United States Constitution.

### B. Due Process

In addition to satisfying the forum state's long-arm statute, to survive a motion to dismiss, the plaintiff must present a *prima facie* case that the district court's exercise of personal jurisdiction would not offend Due Process. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002); *CompuServe, Inc.*, 89 F.3d at 1262. The Sixth Circuit has acknowledged that

Ohio's long-arm statute does not reach to the full limits of the federal
Constitution. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *see also Cadle
Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005).

The relevant Due Process inquiry is "whether the facts of the case
demonstrate that the non-resident defendant possesses such minimum contacts
with the forum state that the exercise of jurisdiction would comport with
'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at
1459 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).
The Court may exercise personal jurisdiction over a non-resident defendant
based on either general or specific jurisdiction. *See Bird*, 289 F.3d at 873.

"General jurisdiction is proper only where 'a defendant's contacts with the
forum state are of such a continuous and systematic nature that the state may
exercise personal jurisdiction over the defendant even if the action is unrelated to
the defendant's contacts with the state." *Id.* (quoting *Third Nat'l Bank v. WEDGE
Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In contrast, specific jurisdiction
is proper under circumstances "where a State exercises personal jurisdiction
over a defendant in a suit arising out of or related to the defendant's contacts
with the forum." *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia v. Hall*,
466 U.S. 408, 414 n.8 (1984)). Specific jurisdiction may be based on a single
act. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th
Cir. 1996).

In analyzing specific jurisdiction, the Court applies three criteria, derived from *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460.

Here, Plaintiff does not allege that general jurisdiction applies to any of the Defendants and, instead, limits his argument to specific jurisdiction.

## 1. Purposeful Availment

"Purposeful availment" is the "constitutional touchstone" of personal jurisdiction and is present where the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citation omitted).

The "'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant

*himself* that create a 'substantial connection' with the forum State[.]"

*CompuServe Inc.*, 89 F.3d at 1263 (quoting *Burger King*, 471 U.S. at 474–75)

(emphasis in original). The quality and nature of the defendant's contacts are

crucial to the determination of purposeful availment. *Hanson v. Denckla*, 357

U.S. 235, 253 (1958) ("The unilateral activity of those who claim some

relationship with a nonresident defendant cannot satisfy the requirement of

contact with the forum State. The application of that rule will vary with the quality

and nature of the defendant's activity, but it is essential in each case that there

be some act by which the defendant purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and

protections of its laws.").

"In a tort case related to defamatory content posted on an internet website,

courts in the Sixth Circuit have used two different tests to determine if purposeful

availment has been established." *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1059

(E.D. Mich. 2015). First, the "*Zippo* test" considers the level of interaction

between the website and the forum state. *See Zippo Mfg. Co. v. Zippo Dot Com,

Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Second, the "*Calder* test"

considers "whether the 'effects' of the defendant's intentional tortious conduct,

which the defendant could expect to be felt in the forum state, was sufficient for

the forum court to exercise jurisdiction over him." *Binion*, 95 F. Supp. 3d at 1059

(*citing Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 937 (E.D.

Mich. 2011)).

### a. The *Zippo* Test

Under the *Zippo* test, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 890; *see also Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 483 (6th Cir. 2003).  To evaluate whether a defendant's contact with the forum state constitutes purposeful availment, the Sixth Circuit uses a "sliding scale" approach, which distinguishes between: (1) interactive websites, where the defendant establishes repeated online contacts with residents of the forum state; and (2) passive websites, where the defendant merely posts information on the site.  *Neogen Corp.*, 282 F.3d at 890; *Cadle Co.*, 123 F. App'x at 678.

Courts have generally found that social media or noncommercial websites do not lend themselves to the *Zippo* test because the defendants do not own or operate the websites, and the websites are generally not used primarily to conduct business.  *See Binion*, 95 F. Supp. 3d at 1060; *Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-12020, 2013 U.S. Dist. LEXIS 140347, at *16 (E.D. Mich. Sept. 30, 2013); *Cross v. Rodgers*, No. 3:16-cv-1128, 2017 U.S. Dist. LEXIS 119777, at *11 (M.D. Tenn. July 31, 2017); *see also Kauffman*, 930 N.E.2d at 790 ("When the Internet activity in question 'is non-commercial in nature, the *Zippo* analysis offers little to supplement the traditional framework for

considering questions of personal jurisdiction.'") (quoting *Oasis Corp. v. Judd*, 132 F. Supp. 2d 612, 622 n.9 (S.D. Ohio 2001)).

Courts that have applied the *Zippo* test to social media websites have held that personal jurisdiction is not established "by merely posting content on websites such as Facebook." *Binion*, 95 F. Supp. 3d at 1060. In *Thomas v. Barrett* the court held that a Facebook post did not establish jurisdiction under the *Zippo* test because although "slightly more interactive" because of the ability to like, share, or comment on postings, the site "lack[s] a commercial nature, and additional interactivity [is] absent." No. 1:12-cv-00074, 2012 U.S. Dist. LEXIS 100054 (W.D. Mich. July 19, 2012).

Similarly, the posts at issue here were on social media websites or blog platforms, which were accessible to users in Ohio and elsewhere. As several courts in this Circuit have held, although there may be an ability to like, share, or comment on the postings, it "does very little to move Defendants' page farther up the continuum from passive to interactive." *Id.* Therefore, Defendants' allegedly defamatory social media and blog posts are insufficient to establish personal jurisdiction under the *Zippo* test.

### b. The *Calder* "Effects Test"

Courts in the Sixth Circuit have also used the "effects test" set forth in *Calder v. Jones* to analyze personal jurisdiction in a case involving alleged defamation. Courts have interpreted the test to require a plaintiff to establish that "(1) the defendant intentionally committed a tortious action that was expressly

aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state." *Cross*, 2017 U.S. Dist. LEXIS 119777, at *12; *Binion*, 95 F. Supp. 3d at 1060. "Injury to a forum resident is not enough under this test, and personal jurisdiction is not found in the absence of 'something more' to demonstrate that the defendant specifically directed his activity toward the forum state." *Cross*, 2017 U.S. Dist. LEXIS 119777, at *12; *see also Air Prods. & Controls, Inc.*, 503 F.3d at 552 ("The Sixth Circuit . . . [has] narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong."); *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F. Supp. 2d 693, 700 (E.D. Mich. 2009) ("Without question, injury to a forum resident is not enough, and the *Calder* test has not been read to authorize personal jurisdiction in a plaintiff's home forum in the absence of 'something more' to demonstrate that the defendant directed this activity toward the forum state." (internal citations omitted)).

In *Calder v. Jones*, the Supreme Court held a California court had jurisdiction over Florida defendants in a defamation case because:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

465 U.S. 783, 788–89 (1984). Although the story was published in Florida, it focused on the California activities of a California resident who the defendant knew resided in California.

In evaluating whether personal jurisdiction exists under the *Calder* test, courts often compare the defendants' connections with the forum state with the connections discussed in *Calder*. For example, in *Reynolds v. International Amateur Ath. Fed'n*, the Sixth Circuit distinguished *Calder* and ordered the district court to dismiss the case for lack of personal jurisdiction where the press release at issue was published outside of Ohio, concerned activities outside of Ohio, the focal point was not Ohio, and the plaintiff's professional reputation was not centered in Ohio. 23 F.3d 1110, 1120 (6th Cir. 1994); *see also Cadle Co.*, 123 F. App'x at 679 (affirming dismissal for lack of personal jurisdiction where "[j]ust as in *Reynolds*, while the 'content' of the publication was about an Ohio resident, it did not concern that resident's Ohio activities."). Similarly, in *Oasis Corp.*, the court distinguished *Calder* and declined to exercise personal jurisdiction where the events discussed in the alleged defamatory on-line statements occurred outside of the forum state and were about an international company whose reputation was not centered in Ohio. 132 F. Supp. 2d at 624 ("As in *Reynolds*, 'the fact that [Defendants] could foresee that [their proclamations would be viewed] and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.'" (quoting *Reynolds*, 23 F.3d at 1120)).

In *Kauffman* the Ohio Supreme Court compared the jurisdictional facts in that case with those in *Calder*, *Reynolds*, *Cadle Co.*, and *Oasis*. 930 N.E.2d 793–97. The *Kauffman* court concluded that the case was more like *Calder*. *Id.* at 795. First, like in *Calder* and unlike in *Reynolds*, *Cadle Co.* and *Oasis*, the defendant's online statements in *Kauffman* concerned the plaintiff's forum activities and it was not "a situation in which jurisdiction is premised on a single, isolated transaction." *Id.* at 796. Second, unlike in *Reynolds*, where the plaintiff ran races throughout the world, in *Kauffman* the plaintiff's reputation was centered in Ohio, because Ohio was the location of its sole base of operations. *Id.* at 796.

Courts in the Sixth Circuit that have considered *Calder* in the context of internet stories and social media have held that an allegedly defamatory post about a resident of the forum state, even if the defendants know that the plaintiff is a resident of the forum state, without more, is insufficient to establish personal jurisdiction over the defendant. *See Binion*, 95 F. Supp. 3d at 1060; *Cross*, 2017 U.S. Dist. LEXIS 119777, at *12–*13; *Hyperbaric Options, LLC*, 2013 U.S. Dist. LEXIS 140347, at *19–20.

In *Binion v. O'Neal* the plaintiff, a Michigan resident, brought suit against Shaquille O'Neal, a Florida and Massachusetts resident, for "obtain[ing] a photograph of Plaintiff and post[ing] it on his Instagram and Twitter accounts, side-by-side with a photograph of O'Neal mockingly contorting his face to look like Plaintiff's." 95 F. Supp. 3d at 1058. The court held that, although highly

offensive, O'Neal's posts were meant for a national or even international audience and were insufficient to establish personal jurisdiction over O'Neal in Michigan. *Id.* at 1059. Similarly, in *Cross v. Rodgers*, the court held that Facebook posts allegedly made by two of the defendants were not directed to Tennessee because the comments at issue were posted for the entire Facebook audience on an international website, and, therefore, the posts were not sufficient to subject them to personal jurisdiction in Tennessee. 2017 U.S. Dist. LEXIS 119777, at *11–13.

Also, in *Hyperbaric Options, LLC*, the defendants were alleged to have posted defamatory statements on YouTube, Twitter, and another website. 2013 U.S. Dist. LEXIS 140347, *at 19. The plaintiffs argued, similar to Plaintiff's argument in this case, that the defendants knew the plaintiff was located in Michigan and all of the statements were directed at a Michigan company. *Id.* The court held "this alone is insufficient to satisfy the 'express aiming' requirement. Without more, a showing that the Plaintiffs are headquartered in Michigan is insufficient to establish that the Defendants expressly targeted the forum state in any of their online postings." *Id.* at **19–20. The court further explained: "the Plaintiffs appear to have sought customers and business activities on a national level. Thus, it cannot be said that the Defendants, in their alleged attempts to defame and interfere with the Plaintiffs, specifically targeted Michigan customers with their messages. Nor is there evidence of any other

connection between Michigan and the Defendants that would indicate express aiming." *Id.* at *20.

Additionally, the Sixth Circuit has also recently held that "'mere injury to a forum resident is not a sufficient connection to the forum' to establish jurisdiction" and that "[t]here can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Bulso v. O'Shea*, No. 17-5271, 730 F. App'x 347, 350 (6th Cir. Apr. 19, 2018), citing *Walden v. Fiore*, 571 U.S. 277, 285, 290 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Here, although Plaintiff attempts to liken this case to *Calder* and *Kauffman*, it is distinguishable for several reasons and more closely resembles *Reynolds*, *Cadle Co.,* and *Oasis Corp.* In *Calder*, the allegedly defamatory story was about the California activities of a California entertainer whose television career was centered in California. 465 U.S. at 788–89. Moreover, the article was published in a magazine that had its largest circulation in California. *Id.* at 790. Similarly, in *Kauffman*, the allegedly defamatory statements were made about Ohio activities of an Ohio company whose business reputation was centered in Ohio. 930 N.E.2d at 796. Here, like in *Oasis Corp.*, *Cadle Co.*, and *Reynolds*, the statements were published outside of Ohio on social media and blog networks about activities that occurred outside of Ohio. Although one of the incidents that Plaintiff himself blogged about did occur in Ohio, there is no indication that any of the events discussed in the allegedly defamatory statements occurred in Ohio.

Carrier Dep. 97–98, ECF No. 41; Defs. Brief 14–15, ECF No. 42. In other words, Ohio was not the "focal point" of the posts. Also, like in *Reynolds*, where the Plaintiff ran races throughout the world, here, Plaintiff's reputation is not centered in Ohio. Plaintiff avers that he gives speeches and attends events throughout the United States. Compl. 6, ECF No. 1.

This case is also analogous to the *Binion*, *Cross*, and *Hyperbaric* decisions that have applied *Calder* within the context of internet and social media posts. Considering the facts in the light most favorable to Plaintiff, Plaintiff cannot establish that Defendants' posts were expressly aimed for dissemination in Ohio. Plaintiff contends that Ms. Frank-Skiba's post was directed at an Ohio audience because it was directed at volunteers for Camp Quest, an organization headquartered in Ohio. However, Camp Quest operates and hosts events across the country. Carrier Dep. 38, ECF No. 41. Therefore, similar to *Hyperbaric*, the target of the post was not limited to Ohio but was meant for a national audience. Here, the only connection to Ohio is Plaintiff's residence, which was established, at most, a few weeks before the allegedly defamatory statements were made. Even if all the Defendants knew when they made the alleged defamatory statements that Plaintiff had recently moved to Ohio, "this alone is insufficient to satisfy the 'express aiming' requirement." *Hyperbaric Options, LLC*, 2013 U.S. Dist. LEXIS 140347, at * 19.

## 2. Arising From

Next, the Court must consider whether Plaintiff's claims "arise from" the Defendants' contacts with Ohio. A cause of action "arises from" a defendant's activities in the state when the defendant's contacts with the forum state are related to the operative facts of the plaintiff's cause of action. *CompuServe Inc.*, 89 F.3d at 1267. The Sixth Circuit has previously found this to be a "lenient standard." *Air Prods. & Controls, Inc.*, 503 F.3d at 554. Plaintiff alleges that Defendants' contact with Ohio is established by their allegedly defamatory posts. These posts are necessarily related to the operative facts of Plaintiff's cause of action. However, as previously discussed, these posts are insufficient to establish sufficient minimum contacts with Ohio.

## 3. Reasonableness

The Court examines several factors in determining whether the exercise of jurisdiction is reasonable. They include: (1) the burden on the defendant to litigate in the forum state; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the case. *CompuServe Inc.*, 89 F.3d at 1268. Moreover, if the "purposeful availment" and "arising from" elements have been satisfied, an inference arises that the exercise of jurisdiction is reasonable. *Id.*

Here, an inference does not arise that exercising jurisdiction is reasonable. Under the first factor, the burden on the defendants would be substantial, in light of the dearth of contacts with the forum. As to the second factor, "Ohio has a

legitimate interest in protecting the business interests of its citizens." *Bird*, 289 F.3d at 875. However, the interest of Defendants' home states in protecting their residents and companies is at least as great as that of Plaintiff's state in protecting its residents. *See Pritz v. S. Cal. Edison Co.*, No. 13-10884, 2013 U.S. Dist. LEXIS 104802, at *16 (E.D. Mich. July 26, 2013).

With respect to the third and fourth factor, Plaintiff argues the burden of litigating this suit in one or more other states might be so burdensome as to practically relinquish the claim. Defendants argue that at least three other states have a greater interest than Ohio in resolving these claims: "California, where Defendants believed Carrier lived at the time they published their allegedly defamatory statements, and where the anticipated 30(b)(6) witness for Skepticon, Inc. is physically located; (2) Minnesota, where Zvan and Myers reside, and FreethoughtBlogs, LLC and The Orbit have their principal places of business; and (3) Missouri, Ms. Lane resides there and Skepticon, Inc. is registered and has its principal place of business there." Defs. Brief 17–18, ECF No. 42.

Balancing all four factors, and in light of recent Sixth Circuit precedent, the Court concludes that Defendants' connection with Ohio is insufficient to make the exercise of jurisdiction over Defendants reasonable. *See Bulso*, 730 F. App'x at 350 ("[M]ere injury to a forum resident is not a sufficient connection to the forum to establish jurisdiction . . . [t]here can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.") (internal citation and quotations

omitted); *see also Reynolds*, 23 F.3d at 1120 (6th Cir. 2000) (finding that even if a publisher could foresee that its report would be disseminated in Ohio, it would not comport with Due Process to subject the publisher to personal jurisdiction in Ohio).

Defendants made allegedly defamatory statements outside of Ohio, relating to conduct that occurred outside of Ohio, about an individual who moved to Ohio a few weeks before the statements were made. In sum, there is no sufficiently substantial connection between any of the Defendants and Ohio to make the exercise of personal jurisdiction reasonable.

The Court declines to hold an evidentiary hearing because even if all of Plaintiff's assertions of fact are true, there is still an insufficient basis for personal jurisdiction. Weighing the evidence in the light most favorable to Plaintiff, the Court holds that Plaintiff has not made a *prima facie* showing of personal jurisdiction over any of the Defendants.[6]

---

[6] Defendants also argue that venue is improper under 28 U.S.C. § 1391. Having concluded that the Court lacks personal jurisdiction over the Defendants, the Court need not consider Defendants' arguments regarding improper venue.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction and **DISMISSES** Plaintiff's Complaint **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**